[Civ. No. 8702. First Appellate District, Division One.—February 11, 1933.]

JAMES T. WATKINS, Appellant, v. CHARLES T. CLEMMER, Jr., Respondent.

568

Francis Gill for Appellant.

George H. Harlan for Respondent.

THE COURT.—This, the first of these appeals, is taken upon the judgment-roll. The appellant sued the respondent upon an account stated for $1500, based upon surgical services rendered to respondent's minor son. The court held that the statement of an account had not been established, and found, among other facts, the following: In 1920 the respondent and Bernice Clemmer were divorced; the custody of their son, John, was awarded to Mrs. Clemmer and the respondent was ordered to pay $20 a month for the boy's support, and later $35, which he has since paid. Mrs. Clemmer remarried and is now Mrs. Wehrli. When John was twelve he was injured in the course of his employment as a newsboy. A major operation was necessary and Mrs. Wehrli engaged the appellant, who operated on the boy in September, 1928, and later rendered her a bill for $1500, which was found to be the reasonable value of his services. Thereafter she asked Jordan L. Martinelli, a San Rafael

lawyer, to telephone to respondent respecting the payment of this and several other bills arising out of the operation. When he did so, on October 29, 1928, respondent replied that he "refused to do anything until action was taken before the Industrial Accident Commission, stating that if the outcome was unfavorable and no award was made, he would then take some steps to borrow the money to meet the aforesaid accounts; . . . other than in said conversation defendant . . . did not admit nor deny owing said debts". About April 1, 1929, the appellant consulted Mr. Martinelli for the first time respecting this $1500 bill. The "plaintiff testified without contradiction at the trial that he had ratified, affirmed and adopted the action and conduct of Jordan L. Martinelli in his said conversation with defendant as his own". Appellant carried respondent on his books as one of the debtors on the $1500 bill, but respondent "never acquiesced in the same". Nothing appears in the findings upon the subject of an account stated further than what has been related. The day after the telephone conversation an application was filed with the Industrial Accident Commission and in due time a disability indemnity was awarded at the weekly rate of $4.17, but the commission denied any award for medical, surgical or hospital treatment. The appellant then filed a claim of lien for his services, and the commission fixed a fee of $375 as a lien against the boy's award, and gave a ten-day notice, within which time appellant withdrew his claim and it was dismissed. The award was affirmed by the Supreme Court. (*Globe Indemnity Co.* v. *Industrial Acc. Com.*, 208 Cal. 715 [284 Pac. 661].) Respondent was informed of all proceedings before the commission. The $403.90 award to Mrs. Wehrli was by her paid to appellant on account and he then brought this action against respondent for the balance.

The appellant presents five points in seeking a reversal. The first is that an account may be agreed to orally, which, of course, is conceded by the respondent. The second point is that the respondent's telephonic promise to Mr. Martinelli "clearly shows a full and complete statement of the account and agreement to pay the same". The third point is that prior transactions may not be inquired into upon proof of an express agreement to pay an account stated. The fourth: "The consideration for an account stated, being a form of

accord, is the agreement itself." Appellant states his fifth point as follows: "One may ratify an unauthorized act or contract (in this case the stating of the account) made on one's behalf by a mere stranger or volunteer whenever there is no want of mutuality."

We are satisfied that appellant's proof of a settled or stated account breaks down on the question of ratification, if for no other reason. The occasion upon which this account is supposed to have been settled was a telephone conversation between Jordan L. Martinelli and the respondent on October 29, 1928. Mr. Martinelli had been asked by Mrs. Wehrli to call up the respondent respecting the unpaid bills. In doing so he avowedly represented her, and the respondent talked with him, knowing that he represented her and nobody else. Indeed, it is not claimed that there was any discussion of the $1500 bill between Mr. Martinelli and the appellant until five months later. It is perfectly clear, then, that if in that telephone conversation any account was stated or promise made, the parties to the contract were the respondent, as promisor, and Mrs. Wehrli (through her agent, Martinelli), as promisee. Indeed, it is conceded by appellant that as to him Mr. Martinelli was then "a mere stranger or volunteer".

A "ratification can only be effectual between the parties, when the act is done by the agent *avowedly for or on account of the principal, and not when it is done for or on account of* the agent himself, or of *some third person*". The quotation is from Story on Agency, seventh edition, section 251a, and the emphasis is ours. The learned author then makes the following comment: "This would seem to be an obvious deduction from the very nature of a ratification, which presupposes the act to be done for another, but without competent authority from him; and therefore gives the same effect to the act as if it had been done by the authority of the party for whom it purported to have been done and as his own act." Mr. Mechem at section 347 of his work on Agency defines ratification as "the subsequent adoption and affirmance by one person of an act which another, without authority, has previously assumed to do *for him while purporting to act as his agent*". At section 386 Mr. Mechem again says that the act must be done *as agent*, but, he adds, if done as agent "*on account of some third*

*person,* it cannot thus be ratified". (Italics ours.) Clark & Skyles on Agency, section 102, page 263, states the rule in substantially the same way. The excerpt quoted by appellant from 2 Corpus Juris, 470, likewise shows that the acts must have been *on behalf of the ratifier* and that the "stranger" has despite the fact that he has acted as a volunteer, *assumed to act* as agent for the ratifier. At page 474 the same idea is repeated in an ampler statement and at page 475 it is said: "Nor can one person ratify an act done by one assuming to act as agent for another person." The courts of this state have always followed this rule. As early as 1859 Chief Justice Field applied it in *Ellison* v. *Jackson Water Co.,* 12 Cal. 542, 551, where he said: "It cannot in strictness be said that Bayerque 'adopted and ratified' the contract between the plaintiff and the company. These terms are properly applicable only to contracts made by a party acting or assuming to act for another. The latter may then adopt or ratify the act of the former, however unauthorized. To adoption and ratification there must be some relation, actual or assumed, of principal and agent. No such relation existed . . . " In *Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237, 243 [26 Pac. 902, 904], it is said: " . . . and it would seem that a ratification is only effectual when the act is done by a person professedly acting as the agent of the party sought to be charged as principal. (Am. & Eng. Ency. of Law, 431, and authorities there cited; *McLaren* v. *Hall,* 26 Iowa, 305.)" In *Schultz* v. *McLean,* 93 Cal. 329, 359 [28 Pac. 1053, 1059], it is said: "There can be no ratification of an authority which the agent did not assume to possess, and which the other party did not believe or suspect him to possess." (See, also, *Pacific Bone etc. Co.* v. *Bleakmore,* 81 Cal. App. 659, 664, 665 [254 Pac. 618].) In *Schomaker* v. *Petersen,* 103 Cal. App. 558, 570 [285 Pac. 342, 347], it is said: "And ratification is effectually implied only in respect of an act done by a person professedly acting as the agent of the party sought to be charged as principal." Probably the most comprehensive and exhaustive review of the subject is to be found in the case of *Keighley, Maxsted & Co.* v. *Durant,* in the House of Lords, reported in 70 L. J. K. B. 662 and at 1901 Appeal Cases, 240, where seven Lord Justices concurred in the decision reversing the Court of Appeal, Q. B. Div. (See 69 L. J. Q. B. 382.) The

dissent of Lord Justice Smith in the Court of Appeal was virtually adopted by the House of Lords and should be read in connection with their decision. It reviews all the English cases on the subject, and, it is interesting to note, relies upon two American text-writers, as well, Story on Agency, section 251a, *supra,* and 2 Kent's Commentaries, page 616. Incidentally *Soames* v. *Spencer,* 1 D. & R. 32, 24 R. R. 631, cited by appellant in the case at bar, is distinguished and disposed of in the Keighley case.

From what has been said, it is clear that the law upon the subject is well settled in California contrary to appellant's theory and contention. The general weight of authority is that way in the United States (see footnote to Mechem, sec. 386), and it is the law in England.

The only finding from which anything can be gleaned upon the subject of ratification is: " . . . that plaintiff testified without contradiction at the trial that he had ratified, affirmed and adopted the action and conduct of Jordan L. Martinelli in his said conversation with defendant as his own." It is indeed doubtful if a person can, by simply taking the stand and making such self-serving declaration, ratify the act of another even if such act is susceptible of ratification. It would seem that there should be something more than that, some act or conduct. (Civ. Code, sec. 2310.) However, it is not necessary to pass upon this question.

In view of what has been said it is quite unnecessary, also, to discuss the first four points urged by the appellant. The telephone conversation wherein it is claimed the account was settled having been between the respondent and a person who then avowedly represented Mrs. Wehrli, and who did not represent, and could not profess to represent, the appellant— who was an utter stranger to the transaction—there could not be a ratification by the appellant, and hence there was no account stated between respondent and himself. The judgment of the trial court was correct and should be affirmed. It is so ordered.

The second appeal was taken from a judgment in favor of the respondent, for his costs, after his general demurrer to the complaint had been sustained and the appellant had refused to amend. The second action was commenced after the first had been decided. Both actions are based upon the appellant's $1500 bill; the first upon the theory that re-

spondent's promise made to Mr. Martinelli as Mrs. Wehrli's agent was the statement of an account which could be availed of by ratification by appellant, and the second upon the theory that the respondent's promise to Mrs. Wehrli was for the benefit of appellant.

The complaint alleges the following facts: The respondent and his wife (now Mrs. Wehrli) were divorced and the care and custody of their son, John, was awarded to the mother; when the boy was twelve he was injured in the course of his employment, and his mother engaged appellant to perform an operation necessary to save the boy from becoming a cripple; the appellant performed these surgical services, the reasonable value of which was $1500; that the respondent said, substantially, to Mrs. Wehrli: You take action before the Industrial Accident Commission on behalf of our son in an attempt to recover from his employer the cost of his medical, surgical and hospital treatment, and if such action terminates unfavorably and no award is made for such treatment, then I shall pay the doctor's (plaintiff's) bill. The next day, so it is alleged, Mrs. Wehrli, relying upon that promise, instituted those proceedings, which terminated unfavorably, in that the award denied compensation for said treatment. It is alleged that Mrs. Wehrli has fully performed all conditions precedent to the performance of respondent's promise. It is then alleged that respondent's promise to pay the $1500 was supported by a valid consideration in that Mrs. Wehrli, at respondent's request, carried through the proceedings before the commission "as requested by the said defendant for his said promise to pay plaintiff $1500". The payment of $336 on account is alleged and judgment asked for $1164, with interest and costs.

The question presented is whether the complaint pleads a contract for the benefit of a third person, the consideration for which is alleged to have moved from Mrs. Wehrli. If no duty already rested upon Mrs. Wehrli to prosecute such proceedings, then it is perfectly clear that her prosecution of them furnished a sufficient consideration for the respondent's promise, the promisee having done something which she was not obligated to do. The appeal is presented largely upon this question of parental duty. In that connection the appellant contends that the respondent and not his divorced wife owed the minor the duty of carrying through the pro-

ceedings before the commission, the argument being that the divorce decree, whereby the custody and control of the boy was awarded to the mother, could not confer authority or guardianship over his estate; further, that his right against his employer was an asset of his estate, and consequently when Mrs. Wehrli performed this duty for respondent it constituted a valid consideration for his promise to pay the appellant's $1500 bill. The respondent denies that there is any such duty and points out that the appellant has cited no authority in support of the proposition that anyone other than a guardian or person having the legal custody of a minor is duty-bound to commence such proceeding.

It appears from the complaint that Mrs. Wehrli employed the appellant to perform the operation, and, so far as appears, the respondent had nothing to do with it. It likewise appears that when the appellant was so employed Mrs. Wehrli had the exclusive care and custody of the minor under a court order made in the divorce action pursuant to section 138 of the Civil Code. After the divorce neither parent would have any superior right over the other to the boy's custody or control. (Civ. Code, secs. 197, 198.) Such rights and powers, therefore, as the mother had respecting custody and control were derived solely from that order, and the question having been decided in her favor by the order, it became a settled and closed issue, subject only to being later modified or vacated (Civ. Code, sec. 138), or to the appointment of a guardian of the person, or the marriage or majority of the boy. (Civ. Code, sec. 204.) That order presumably is still in effect and while it remains in force the control is hers, and with control goes responsibility. "The parent entitled to the custody of a child must give him support and education . . . " (Civ. Code, sec. 196), and if there is parental neglect a third person can supply necessaries and recover the reasonable value thereof from the parent having custody. (Civ. Code, sec. 207.) It is true that a parent "as such, has no control over the property of the child". (Civ. Code, sec. 202.) It is also true that an order under section 138 of the Civil Code does not make the parent a guardian (*Collins* v. *Superior Court*, 52 Cal. App. 579, 580 [199 Pac. 352]), but Mrs. Wehrli, under the court order, would certainly be entitled to the boy's earnings, as they would follow control despite the provisions of section

202 of the Civil Code, *supra.* (See sec. 197, Civ. Code, and *Pacific G. D. Co.* v. *Industrial Acc. Com.*, 184 Cal. 462, 464 [194 Pac. 1, 3, 13 A. L. R. 725].) Earnings become important in this discussion only because they are related to the proceedings before the commission. Can it be that the father, with no right to the son's earnings, is the one to prosecute a proceeding arising out of an employment whence the earnings are derived, while the mother, under the law, is entitled to the earnings themselves? In this connection it is noteworthy that by section 57 (a) (2) of the Workmen's Compensation Act (Stats. 1917, p. 869), the commission is invested with "full power and authority . . . To regulate and provide the manner, *and by whom,* minors . . . shall appear and be represented before it". (Italics ours.) The inquiry naturally arises, would the respondent have been recognized or given any standing before the commission?

It was not at all necessary that a guardian of the minor's estate be appointed to prosecute the claim before the industrial accident commission; the appearance could be by trustee and guardian *ad litem,* as, indeed, it is alleged to have been in the instant case. Under section 57 (a) (3) of the said act the commission has power "To appoint a trustee or guardian *ad litem* to appear for and represent any . . . minor . . . upon such terms and conditions as it may deem proper . . . " and the case of *Lee* v. *Superior Court,* 191 Cal. 46 [214 Pac. 972], holds that where the estate of a minor consists merely of a claim for compensation under the said act, the jurisdiction of the probate court to appoint a guardian of such estate is ousted, by the commencement of the proceeding for compensation before the power of the probate court is invoked. Conversely, if a guardian is first appointed in probate, the commission is then without jurisdiction to appoint a trustee. A claim for compensation, therefore, while a valuable right in the nature of a chose in action, is not necessarily such an asset or such property of a minor as to require guardianship. Indeed, the act is designed to obviate proceedings in the probate court, ample statutory machinery being provided for safeguarding and accounting for the award. (See sec. 57 (a) (1) to (3), *supra.*) Moreover, if respondent had filed the application with the commission on behalf of the boy—the order under section 138 being then in effect—it would have been an in-

terference with the control awarded by that order and a contempt of the court making it.

We are mindful of the fact that the statutory provisions to which we have referred do not necessarily mean "that the natural duty of a father to provide for his minor child is, under the law, finally and absolutely terminated by an award of the custody of the child to the mother". (*Lewis* v. *Lewis*, 174 Cal. 336, 340 [163 Pac. 42, 44].) But while that is true, it cannot be gainsaid that those statutory provisions do cast upon the parent to whom custody is awarded the *primary* parental duty and liability and as "between such parent and the one who has been deprived of such custody the latter is absolved from liability, in the absence of any decree of court requiring contribution to such maintenance". (*Pacific G. D. Co.* v. *Industrial Acc. Com., supra,* p. 465.) Section 270 of the Penal Code requires the father to provide for his minor child regardless of property settlements, alimony or other similar orders. It is, of course, a criminal statute. In the instant case any order requiring respondent to pay a given sum periodically for the support of the boy can be enforced: (1st) by contempt proceedings, and (2d) by this very effective cumulative remedy under section 270. This remedy was invoked in precisely this way in *People* v. *Schlott,* 162 Cal. 347, 349 [122 Pac. 846], where the defendant had omitted to pay $50 a month for the support of his divorced wife and their child in the mother's custody. In several recent cases the question is discussed of a father's responsibility. They are Industrial Accident Commission cases where the question was whether the minor was a dependent of the father at the time of the father's death, an award of the minor's custody having been made to the mother, but the father having resumed parental relations. They are *Pacific G. D. Co.* v. *Industrial Acc. Com., supra, Llewellyn Iron Works* v. *Industrial Acc. Com.,* 191 Cal. 28 [214 Pac. 846], and *Federal Mutual L. Ins. Co.* v. *Industrial Acc. Com.,* 195 Cal. 283 [233 Pac. 335], and they all affirm the award to the minor as a dependent. The later cases follow the Pacific Gold Dredging case, wherein it is said: "We find no authority for holding that, *as between parent and child,* the father is absolved from his legal duty to provide support . . . And while, *as between himself and third parties,* that obligation may be shifted in proceedings

of divorce or guardianship . . . , it may be doubted if by such proceedings, to which he is not a party, a minor can be deprived of his natural right to turn to his father for maintenance, *if the substituted source of supply fails."* (Italics ours.) Other Industrial Accident Commission cases are the Sherer case, 182 Cal. 488 [188 Pac. 798], and the Southern California Edison case, 92 Cal. App. 355 [268 Pac. 415]. The most recent case on the general subject is *Dixon* v. *Dixon,* 216 Cal. 440 [14 Pac. (2d) 497], where the father's obligation to support his daughter had ended in Oklahoma (where a girl attains majority at eighteen) and thereafter they came to California, where her mother sued the father in the daughter's behalf for the daughter's support. The father was held liable for the daughter's support *here* until she reached twenty-one. The court said: "Neither the age of majority in Oklahoma nor the provisions of a decree of divorce in that jurisdiction have any bearing whatsoever on this issue." It will be readily observed that all these cases deal with the duty of support *as between the minor and his parent,* and not with the duty of support *as between a third party and the parent.* (See Pacific G. D. Co. case, *supra.*)

Under the statutory provisions and decisions to which we have referred, we are satisfied that the primary parental obligation in this case was with the mother, and will continue with her until the order (under sec. 138) is modified or vacated; that so long as the order remains in force it is the measure—at least as between the former spouses—of the father's obligation. That being so, it was the duty of the mother, having custody of the minor, "to assert his rights or to vindicate his wrongs" as his "nearest relation" or "next friend". (*In re Cahill,* 74 Cal. 52, 55, 56 [15 Pac. 364, 366].) To paraphrase *Poetker* v. *Lowry,* 25 Cal. App. 616, 619 [144 Pac. 981, 982] : That which Mrs. Wehrli did, in proceeding before the commission, in consideration of respondent's promise "is exactly that which under the law, and independent of the agreement, she was bound to do" and constituted no valid consideration for the alleged contract made with respondent. "It is well settled that neither a promise to perform a duty, nor the performance of a duty, constitutes a consideration of a contract." (*Sullivan* v. *Sullivan,* 99 Cal. 187, 193 [33 Pac. 862, 864].) If no valid consideration supports the alleged contract and the promisee

cannot enforce it, it follows, of course, that the beneficiary cannot. This was doubtless the view entertained by the trial judge and we think it is the correct view.

The second point made by the appellant is that: "As an agreement to settle the claim, defendant's promise is supported by sufficient consideration." There is nothing in the complaint respecting a disputed claim. Reference is made in appellant's brief to the findings in the first case, but needless to say each case must be considered by itself and each of these two appeals has been so treated by us and entirely independently of the other.

The third point, that respondent's promise was not within the purview of the statute of frauds, need not be discussed at any length. The discussion of the first point indicates our views on this subject. If the respondent was not under obligation to pay the doctor bill—the complaint shows that Mrs. Wehrli had already incurred the bill and had become obligated on it—then his promise was to answer for the debt of another and within the statute. If it was his own debt, then, if course, it was not within the statute.

What has been said disposes of the appellant's contentions respecting sections 1430 and 1431 of the Probate Code. The provisions of section 57 (a) (1) to (3) of the Workmen's Compensation Act, *supra,* answer both contentions. The judgment in this second case should likewise be affirmed.

For the reasons stated in the foregoing opinions, both judgments (in cases Nos. 9810 and 10001, in the trial court) are and each of them is affirmed.