[L. A. No. 19767.   In Bank.   Dec. 16, 1947.]

Guardianship of the Person and Estate of FRANCES CLAPP HALL, an Incompetent Person.   ROSALIE G. SHEEDY, as Guardian, etc., Respondent, v. ANNA PEARSON HATCH et al., Appellants.

Clarence Harden and Henry F. Walker for Appellants.

Gray, Cary, Ames & Driscoll for Respondent.

SPENCE, J.—This is an appeal from an order settling the guardian's second annual account herein. The disputing parties are daughters of the ward, the guardian being Rosalie G. Sheedy and the objector being Anna Pearson Hatch. Their differing positions as to applicable accounting principles stem in large measure from their divergent views as to the import of a previous order in this proceeding. However, other points of challenge are also urged against the propriety of the order

here subject of appeal. In view of the present unsatisfactory state of the record with regard to certain evidentiary essentials, we have concluded that it is necessary for the probate court to undertake a further hearing and redetermination of the matter in the light of the following discussion.

On May 21, 1943, without notice to Mrs. Hatch, Mrs. Sheedy was appointed guardian of the person and estate of their mother, Mrs. Hall, on a petition alleging that the latter "by reason of her age and present physical condition" was "unable unassisted to properly manage and take care of her property," and was "liable to be deceived or imposed upon by artful or designing persons." Mrs. Hall was the beneficiary of a trust in an eastern bank—the principal source of her income. Sometime in 1941, she had gone to live in the San Diego home of her daughter Mrs. Sheedy, the latter's husband and four children. Then in May, 1942—about a year before the guardianship proceeding was begun—Mrs. Hall bought a ranch near Alpine in San Diego County, giving a trust deed for part of the purchase price; and thereafter she and the Sheedy family made their home there together.

On June 22, 1943, Mrs. Sheedy, as guardian, filed a "petition for monthly allowance." She alleged that her mother, Mrs. Hall, had been living "as a member of her household" and "under her care and supervision" for "approximately two years"; that the Alpine ranch had been purchased for the benefit of her mother's health; that petitioner, her family and her mother had lived on the ranch for about a year; that her mother had been receiving an average annual income of $15,000 or more from a trust created by her parents; that since they had been living together, her mother had "contributed approximately $800.00 per month to the household and family expenses of herself" and "petitioner and her family"; that there was "ample income" to "permit the continuance of [such] allowance for the maintenance and family expenses" of "petitioner and her family"; and that there had been and would continue to be "additional expenses in connection with the maintenance and operation of the ranch." The prayer was for the specified monthly allowance for the purposes mentioned and for authority to "continue the maintenance and operation of the ranch as in the past." On the same day the court entered an ex parte order decreeing that "ROSALIE G. SHEEDY, Guardian of the person and estate of FRANCES CLAPP HALL, an incompetent person, is

hereby granted an allowance of $800.00 per month, with which to meet the household and living expenses of said petitioner, her family and her mother, to be used and expended to maintain and conduct the household of said petitioner, with whom said incompetent resides, in the same manner as said household has been conducted in the past, and that said Guardian is hereby relieved from filing a detailed account of the expenditure of said sums." The order "further . . . authorized" the guardian "to continue the operation of the Alpine, California, ranch and to expend such additional sums as may be necessary for that purpose out of the income of the incompetent; provided . . . that the expenditure of said sums . . . shall be more particularly set forth and itemized in the annual accounts of said Guardian herein."

On August 6, 1945, the guardian filed her second annual account. The account showed total receipts of $42,137.19 and total expenses of $40,964.36, with a balance on hand of $1,172.83. The receipts consisted of the following items:

Cash on hand following settlement of the first annual account .............................$   512.22  
Income from the eastern trust................. 31,571.83  
Income from the ranch ...................... 1,877.08  
Insurance for fire loss of ranch buildings........ 1,137.30  
Liquidation of eastern assets ................ 3,538.76  
Advance by bank for tax and trust deed payments ................................... 3,500.00  

The listed expenses showed that only $2,000 principal and $31.95 interest had been paid on the $3,500 bank loan, so that an analysis of the account actually discloses a deficit rather than a surplus. Omitting the amount on hand at the beginning of the accounting period in question and disregarding the $3,500 bank loan and the payments thereon, the report discloses—in round figures for convenient reference—that the actual receipts for the year were $38,000, including approximately $1,900 from the ranch, and that the actual expenses claimed were $39,000.

Of this $39,000 disbursement, payments amounting to $9,639 are not questioned. They include $1,075 for cost of administration, $5,773 paid on the trust deed on the ranch, and $2,791 for taxes, $312 of which was paid on the ranch home. A further sum of $7,070 was spent to rebuild the buildings which had burned on the ranch. While no per-

mission to make this expenditure was obtained, this item is not attacked. This leaves some $22,291 which was expended in paying $9,600 as the annual sum due to Mrs. Sheedy, pursuant to the authorized monthly allowance of $800, and $12,691 for operation of the ranch and for incidentals. Mrs. Sheedy testified that each month she withdrew $800 from the ward's funds for deposit in her own bank account. With the approval of the court, she refused to account for her use of said money other than to say that she paid "household expenses" therefrom. According to the account and her testimony, the remaining sum of $12,691, used in large part in operating the ranch, was spent as follows: $3,665 for labor; $2,000 for animals purchased, including three blooded riding horses and a dog; $4,000 for feed and equipment for animals; $800 for gasoline and repairs for four automobiles; $400 for the cost of several automobile trips taken by the ward, the guardian, the latter's husband and one child; $300 for clothes and ordinary medical expenses for the ward; $230 for individual gifts and group donations; and the balance for various supplies for the ranch and home.

Objections to the account were filed by Mrs. Hatch, the guardian's sister. At the hearing it developed that in operating the ranch the guardian had bought and maintained several riding horses, which were used exclusively by the members of her family other than the ward, who, as a woman 76 years old, was described as "too old to ride." It also appeared that a considerable part of the ranch activity was concerned with the production of food for the family. Thus, cattle and hogs were bought and fattened, a few for subsequent sale but most for butchering, storage in deep freezers and later use; cows were kept to produce milk and butter; and chickens were bought and raised both for food and to furnish eggs for the family. The court, in its findings and order, disallowed $300 spent on buying and feeding the dog, and decreed that the guardian thereafter should not maintain, at the expense of the estate, "any live stock in excess of two milk cows, two work horses and a reasonable number of chickens in the operation of the Alpine ranch." All other items in the account as rendered were allowed. From this order Mrs. Hatch personally and the ward through Mrs. Hatch as guardian *ad litem,* have appealed.

Appellants' points of objection will be considered in their order of presentation on this appeal. The first to be

noted is their challenge of the adequacy of the second annual account as filed. They claim that it is legally insufficient because it merely lists cash receipts and disbursements during the year, with no statement of the property on hand or report or other facts showing the actual condition of the ward's estate. But granting that the account was not so complete as might be desirable, the absence of the added detail suggested by appellants does not negative its sufficiency for consideration as a "current" report. (*Estate of Hovland,* 38 Cal.App.2d 439, 446 [101 P.2d 500].)

Appellants' second and major point of argument concerns the order of June 22, 1943, in authorization of the $800 monthly allowance to respondent and her continued operation of the ranch. As a preliminary proposition, they claim that it is invalid and void because (1) it was made without notice and (2) the court had no authority to include therein provision for the living expenses of the guardian and her family. But such dual attack upon the validity of the order overlooks the power conferred upon the court by section 1558 of the Probate Code. That section expressly declares: "On the application of the guardian or next of kin of an insane or incompetent person, the court may direct the guardian to pay and distribute surplus income, not used for the support and maintenance of the ward, or any part of such surplus income, to the next of kin whom the ward would, in the judgment of the court, have aided, if said ward had been of sound mind. The granting of such allowance and the amounts and proportions thereof shall be discretionary with the court, but the court shall give consideration to the amount of surplus income available after due provision has been made for the proper support and maintenance of the ward, to the circumstances and condition of life to which the ward and said next of kin have been accustomed and to the amount which the ward would in the judgment of the court, have allowed said next of kin, had said ward been of sound mind. Notice of the hearing of said application shall be given as provided in Section 1557 of this code."

It is quite evident from the language used in respondent's "petition for monthly allowance" and the order made in conformity therewith that a distribution of surplus income was sought and granted as authorized by the above-quoted section. Thus, respondent presented to the court these considerations: "the condition of life" to which she and her

mother had been accustomed for the past two years as members of the same household; her mother's contribution during that period of "approximately $800.00 per month to the household and family expenses"; and the claim that from the "approximately $15,000.00" or more received "per year" by the mother as a trust beneficiary, there would be "ample income" to permit the continuance of the $800 per month allowance from her mother's estate for "family expenses" as "in the past." In the light of these pertinent circumstances bearing upon such parties' established living and financial arrangements, the court unquestionably was warranted in recognizing respondent as "the next of kin whom the ward would . . . have aided, if said ward had been of sound mind" and in approving the continuance of the monthly allowance as a "disbursement of surplus income" from the estate of respondent's mother and ward. (Prob. Code, § 1558.)

Nor is such order vulnerable to the objection that it was made ex parte. This procedural point is governed, as above indicated, by section 1557 of the Probate Code, which provides, in general, for the five days' notice preceding the hearing except that where "the application is by the guardian, the court or judge may order the notice to be given for a shorter period or dispensed with." (Emphasis added.) While the order is silent upon the point, it must be presumed that the court "dispensed with" notice by the guardian.

The rule is well stated in 15 California Jurisprudence at page 68, section 150, as follows: "Where the record is silent as to what was done it will be presumed in favor of the judgment [or order] that what ought to have been done was not only done but rightly done. Even though the existence of a jurisdictional fact be not affirmed on the record, it will be presumed. Service of process or notice or facts rendering it unnecessary, and proof of service are presumed where necessary to sustain jurisdiction, unless the record shows the contrary." (Emphasis added.) Frequently cited as early instance of the application of this rule is the case of Hahn v. Kelly, 34 Cal. 391 [94 Am.Dec. 742], and it has been consistently "followed in every decision since having to do with the same question." (People v. Smith, 17 Cal.App.2d 468, 475 [62 P.2d 436]; see, also, Wells Fargo & Co. v. City of San Francisco, 25 Cal.2d 37, 40 [152 P.2d 625]; Rico v. Nasser Bros. Realty Co., 58 Cal.App.2d 878, 882 [137 P.2d 861].)

Accepting then the validity of the order of June 22, 1943, appellants next raise the question of its interpretation, and particularly the significance of the monthly allowance provision. They argue that such stated allowance to respondent should be regarded as "guardianship funds" so that she should be held chargeable for an accounting as to her proper use of the money. On the other hand, respondent asserts that the monthly allowance was ordered paid to her as "next of kin," that is, daughter, and not as guardian of the ward; that when so paid, these amounts became her absolute property; and that she could not be required to make any account as to what she did with such moneys. In view of these opposing positions by the parties, it becomes necessary to analyze the terms of the order in question and their import in relation to respondent's execution of her trust.

█ In the exercise of its discretion under authority of section 1558 of the Probate Code, the court may grant allowances from the "surplus income" of the incompetent to the latter's next of kin, with or without conditions, as the facts warrant. Such "statute's endorsement of a policy of flexible procedure, resting in the sound discretion of the court, permits recourse to the principles of equity responsive to the interests of both the ward and next of kin." (*Guardianship of Hudelson*, 18 Cal.2d 401, 407 [115 P.2d 805]; see, also, annotations 59 A.L.R. 653, 160 A.L.R. 1435.) █ So here the order of June 22, 1943, awarded to respondent personally from her mother's estate "an allowance of $800.00 per month" for a stated purpose—"to meet the household and living expenses of" herself as "petitioner, her family and her mother" so as "to maintain and conduct the household . . . in the same manner as . . . in the past"—but "relieved" her "from filing a detailed account of the expenditure of said sums." Such award contemplated that respondent, as guardian in her accounting for the expenditure of trust funds, should present evidence that she paid the monthly sums to herself as the designated "next of kin" sharing in the "surplus income" of her ward's estate. But the mere fact that respondent was also the guardian of such estate would not obligate her, any more than another daughter of the ward, to account for her use of the monthly allowance after having received it, in the absence of the court's requirement of such "detailed" report. The dual status of respondent

in relation to her mother, because of natural as well as legal considerations, was an immaterial factor insofar as her beneficial standing under the court's order was concerned.

However, the limitations of the order of June 22, 1943, had a definite bearing on the second annual account thereafter submitted by respondent. By virtue of that order, items of expenditure reasonably classifiable as "household and living expenses" of respondent, her family and her mother would not be proper charges against the estate, for the liberal monthly allowance to respondent was expressly made for those purposes and the estate could not be twice charged therefor, unless it was shown that the allowance was insufficient to that extent.. Likewise, there is the further provision of that order allowing respondent as "Guardian . . . to continue the operation of the Alpine, California, ranch," but "as in the past" consistent with the prayer of her petition. Such authorization would not permit her to extend in any great manner the activities of the ranch, or to maintain and operate it on some new and unusual scale. These all were considerations requiring, as appellants maintain, a careful investigation of respondent's account at the hearing.

The account shows that several hundred dollars expended for clothes, dressmaker bills, beauty shop treatments, and ordinary medical care for the ward were charged as ranch expenses or as incidentals. Yet these items would appear to be a part of the "living expenses" for which the monthly allowance to respondent for maintenance of the joint household was specifically made. Likewise, some explanation was due from respondent as to the insufficiency of her monthly allowance which would authorize her charging as ranch expenses sums paid with respect to certain public utility expenses—such as "flamo gas used in main dwelling and caretaker's house"—and live stock purchases and maintenance to furnish food for the use and benefit of the combined household. Similarly, in line with respondent's monthly allowance, it would seem some adjustment should be made so as to allocate to "household and living expenses" some of the expense listed for food, supplies, and lodging in conjunction with the several automobile trips taken by the ward, respondent, the latter's husband and one child. Then the large sums spent for the purchase and maintenance of blooded saddle horses obviously constituted a departure from the way the ranch had previously been run, and were

for the personal pleasure of respondent and her family. While at the account hearing the court recognized the impropriety of this unauthorized expansion of ranch activity by restricting such operations in the future, all amounts expended in that connection during the year in question were approved. Other large expenses associated with the operation of the ranch were allowed without any inquiry or evidence as to whether they were reasonable and in accordance with the previous court limitation placed upon respondent in that regard. Then nearly $1,000 in charges for gasoline and other automobile maintenance items, including the regular annual rental of parking space in San Diego, were separately listed as ranch expenses and so approved when the evidence indicates that some portion thereof should have been borne personally by respondent or, at best, included as part of the "household and living expenses" of the joint family as contemplated by respondent's monthly allowance. Still other items for supplies and equipment were scheduled as expenses of operating the ranch despite evidence which either classified them as household expenses or failed to show them to be of a different nature or reasonably necessary to the continued operation of the ranch in the same manner.

It requires no extended argument or citation of authorities to establish the merit of appellants' objections to respondent's account in the light of the record. The discrepancies and deficiencies in the evidence undoubtedly stemmed from respondent's persistent position, which was adopted by the court at the hearing, that a correlating inquiry into respondent's use of the $9,600 taken as a monthly allowance was not proper and that a sufficient explanation of any other expenditure was its assignment as a cost of operating the ranch. In short, the whole situation indicates that no real hearing was had on the account under the general objection that large amounts had been improperly used, that exceptions taken to specific items were considered on the wrong theory, and that evidence material to these issues was excluded as inadmissible. However, on the present record many of the items summarily allowed cannot be segregated and a proper correction here made. Accordingly, the account must be returned to the probate court for reexamination in the light of the principles hereinabove discussed.

Appellants specify as their third point on appeal their objection to allowances made in the account for "gifts,"

in the amount of several hundred dollars from the estate's funds, to individuals, to charities and to a political organization. While appellants argue that "neither the general guardian nor a court has the power to dispose of the ward's property by way of a gift" (39 C.J.S. 123, § 79), such rigid principle has its exception where allowances from the surplus income of the estate are sought as "donations for charitable and religious purposes" and with the object of "carrying out the presumed wishes of" the incompent person (25 Am. Jur. 52, § 79; *In re Brice's Guardianship*, 233 Iowa 183 [8 N.W.2d 576, 579]). However, such exception does not aid respondent where it not only appears that no previous court authorization for the "gifts" was obtained, but, in addition, none would seem proper in view of her failure to offer sufficient supporting evidence therefor in the light of the noted limitations governing the propriety of such allowances. So to this extent also the account requires further examination.

Appellants' fourth and final objection relates to the form of the allowance of the attorneys' fees in this proceeding. They claim that the order therefor is void in that it runs directly in favor of the attorneys and so "as a direct judgment for money in favor of a person not a party to the proceeding," it comes within the condemnation of *Garra* v. *Superior Court*, 58 Cal.App.2d 588, 590 [137 P.2d 31]. But their argument is without merit. While the court found that the attorneys were "entitled to receive [as] reasonable compensation for services rendered [the] Guardian and the estate" during the year "the sum of $600.00," the order provided that the "Guardian [was] authorized and directed to pay" the stated sum to the attorneys "for [the] services [so] rendered." Thus, here, contrary to the situation in the Garra case, the order *did* "provide that said amount should run as an allowance to the guardian for the purpose of paying the attorney[s]" (58 Cal.App.2d 589), and its form is not open to challenge. (See *Guardianship of Copsey*, 10 Cal.2d 748, 751 [76 P.2d 691].)

The order subject of this appeal is reversed and the matter is remanded for a further hearing in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.