[S. F. No. 18876.   In Bank.   Oct. 20, 1953.]

LYNDLE E. BURGE, a Minor, etc., Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

John F. O'Sullivan, Millington, Dell'Ergo, Weeks & Morrissey for Appellant.

Dion R. Holm, City Attorney, and Clayton W. Horn, Deputy City Attorney, for Respondent.

TRAYNOR, J.—Plaintiff Lyndle E. Burge, a minor, by his father as guardian ad litem, brought this action against defendant city and county of San Francisco to recover damages for personal injuries suffered by him while he was a passenger on a street-railway car operated by defendant. Defendant filed an answer pleading as a special defense that plaintiff's claim had previously been compromised by his mother in a proceeding under section 1431 of the Probate Code. The issue so raised was tried separately pursuant to section 597 of the Code of Civil Procedure. The court concluded that the order approving the compromise was not subject to collateral attack and entered judgment in favor of defendant. Plaintiff appeals. He concedes that the attack is collateral but contends that the court had no jurisdiction to approve the compromise on the grounds that the petition for approval of the compromise and the order approving it were fatally defective in failing to recite jurisdictional facts and that even if these facts could be proved in the present proceeding the record therein discloses that his mother was without authority to compromise his claim. We have concluded that this contention cannot be sustained and that the judgment must therefore be affirmed.

Plaintiff was 14 years old at the time of the accident. His father and mother had previously been divorced. The interlocutory decree provided that "plaintiff [father] and defendant [mother] have joint custody and control of the said minor children, with personal custody in the defendant, and the plaintiff has the right and privilege to visit said minor children and take them out at all reasonable times." Plaintiff was one of the minor children mentioned in the decree and lived with his mother after the divorce.

All negotiations leading to the compromise were conducted between plaintiff's mother and defendant. Plaintiff's father knew that the accident had occurred and that a claim had been filed, but he did not participate in the compromise proceedings or become aware of the compromise until after it had been made. Plaintiff's mother agreed to release his claim against defendant upon the payment of $500. She filed with the superior court a verified petition seeking approval of the compromise, and it was approved. Defendant paid the $500 and plaintiff's mother executed a release. The present action was brought before plaintiff reached majority.

The verified petition[1] and the order approving the compromise[2] are set forth in the footnotes. Plaintiff contends at the outset that the court failed to approve the compromise, on the grounds that the order recites that it approved a "disputed claim for minor that Iva Burge has against" defendant and that such a claim is not the claim of plaintiff against defendant. There is nothing to show that there was any need for a judicial proceeding to approve a compromise of any claim of her own that plaintiff's mother may have had against defendant. The proceeding was entitled "Application of Iva Burge for an order approving the compromise of disputed claim entered by a minor, Lyndle Burge." The verified petition recited that it was the compromise of the minor's claim for which approval was sought, and the order recited that it was upon the reading and filing of that petition that it appeared to the court that the compromise offer was reasonable. Although the order made a slipshod description of the claim that was being compromised, when it is read with the petition, there can be no doubt that the court approved a compromise of plaintiff's claim against defendant.

It is plaintiff's principal contention that the court lacked jurisdiction to compromise his claim. ■ Ordinarily when an order or a judgment of a court of general jurisdiction is collaterally attacked, the only evidence that may be considered

---

[1]"The petition of IVA BURGE respectfully shows: (1) That petitioner is the mother of LYNDLE BURGE, a minor, age fourteen, and that both petitioner and the minor are residents of the City and County of San Francisco.

"(2) That minor had disputed claim for money against the City and County of San Francisco for injuries sustained by minor when an accident occurred on August 29, 1945, at Duboce and Fillmore Streets involving a collision of Streetcars 'N' and #22, operated by the City and County of San Francisco.

"(3) That said City and County of San Francisco offered to pay in compromise of said claim the sum of FIVE HUNDRED ($500.00) DOLLARS, which, in the opinion of petitioner is a reasonable compromise, and that it will be in the best interests of said minor if said compromise is accepted by this Court.

"WHEREFORE, petitioner prays that the Court approve said compromise and direct that said money be paid to her without the filing of any bond.

IVA BURGE
PETITIONER"

[2]"Upon reading and filing the verified petition of IVA BURGE for an order approving compromise of the disputed claim for minor that IVA BURGE has against the City and County of San Francisco, and it appearing to the Court that the compromise offer is reasonable,

"IT IS HEREBY ORDERED that said compromise be and it is hereby approved, and that the said City and County of San Francisco, is hereby directed to pay the sum of FIVE HUNDRED ($500.00) DOLLARS to IVA BURGE, a minor, without the filing of any bond."

in determining whether the order or judgment is void is the record in the proceeding in which it was entered. If the record is silent as to the existence of a jurisdictional fact, that fact will be presumed. (*Guardianship of Hall*, 31 Cal.2d 157, 164 [187 P.2d 396]; *Wells Fargo & Co.* v. *City of San Francisco*, 25 Cal.2d 37, 40 [152 P.2d 625]; *cf. Thompson* v. *Cook*, 20 Cal.2d 564, 569, 573 [127 P.2d 909].) ▮ It has been held, however, that if a proceeding is wholly statutory and unknown to the common law, the court, even though ordinarily one of general jurisdiction, is a court of special jurisdiction for that proceeding, and if jurisdictional facts do not appear of record in such a proceeding, there is no presumption of regularity. (*Estate of Sharon*, 179 Cal. 447, 457-458 [177 P. 283]; 49 C.J.S., Judgments, p. 840; *cf. Estate of Kay*, 30 Cal.2d 215, 220-221 [181 P.2d 1].) ▮ If the presumption is not applicable, however, failure of the record in such a proceeding to recite a jurisdictional fact "does not make the judgment void, for extrinsic evidence is admissible to prove such fact, except where some statute makes the record the exclusive mode of proof." (*Estate of Sharon*, *supra*, 179 Cal. at p. 458.)

▮ It is the general rule that without statutory authority a parent, as such, cannot compromise or release his child's cause of action. (See 103 A.L.R. 500; 39 Am.Jur. 629.) ▮ It has been held, however, that proceedings under section 1431 are entitled to the presumption of regularity. (*Rico* v. *Nasser Bros. Realty Co.*, 58 Cal.App.2d 878, 882 [137 P.2d 861].) Plaintiff, relying on the Sharon case, *supra*, contends that the Rico case was erroneously decided. Defendant, on the other hand, contends that the Hall and Wells Fargo cases, *supra*, are controlling. It is unnecessary, however, to resolve these contentions if the jurisdictional facts are established by the extrinsic evidence.

▮ Under section 1431, to establish the right of the mother to compromise a minor's disputed claim, it must be shown, if the father is not dead, that (1) the father and mother are living separate or apart; (2) the mother has the care or custody of the minor; (3) the compromise has the approval of the superior court of the county where the minor resides; and (4) a verified petition in writing seeking approval of the compromise has been filed with such court.

Plaintiff contends that a hearing on the petition is also required. Plaintiff and his mother testified in the present proceeding that neither was present in court when the order

614

approving the compromise was made and that no testimony was taken relating to the extent of his injuries or the fairness of the compromise. The trial court granted defendant's motion to strike this testimony. No error appears. ██ Although it would ordinarily be better practice[3] to hold a hearing and take testimony, the statute does not require it. (*Rico v. Nasser Bros. Realty Co., supra,* 58 Cal.App.2d 878, 881.) Plaintiff relies on *Berry* v. *Chaplin,* 74 Cal.App.2d 652 [169 P.2d 442], for a contrary rule. There, however, the proceeding was under section 196a of the Civil Code. The court was careful to point out that even if section 1431 were deemed to apply to actions by a child under section 196a (see 2 Armstrong, California Family Law, p. 1084), no attempt had been made to compromise the child's claim thereunder, since the parent had never filed a verified claim for approval of the compromise as required by section 1431. (74 Cal.App.2d at p. 660.) Insofar as the court intimated that a hearing would be necessary had the proceeding been under section 1431, the statement was unnecessary to the decision in the case and is contrary to *Rico* v. *Nasser Bros. Realty Co., supra.*

The verified petition and the order approving the compromise disclose that requirements (3) and (4) above were met, but do not disclose that (1) the father and mother were living separate or apart or that (2) the mother had the care or custody of plaintiff. Extrinsic evidence, however, established that the father and mother were divorced and were living apart at the time of the compromise. The controlling question that remains, therefore, is whether it was also proved that the mother then had the "care or custody" of plaintiff. To answer that question we must first determine what the Legislature meant by the terms "care or custody."

Until 1939, section 1431 of the Probate Code provided that a disputed claim of a minor could be compromised by his mother only if "his father is dead or has deserted or aban-

---

[3]Rule 28(c) of the Superior Court Rules (33 Cal.2d 14, effective January 1, 1949, which was after the compromise in this case) provides: "Upon the hearing of the petition, the person compromising the claim on behalf of the minor or incompetent and the minor or incompetent shall be in attendance unless for good cause the court dispenses with such personal appearance. The court may require the presence and testimony of the attending or examining physician, as well as other evidence relating to the merits of the claim, the nature and extent of the injury, care, treatment and hospitalization." Attendance of the parties and the taking of evidence is even today not mandatory and a compromise can still be effected without such testimony and attendance, if, in the discretion of the trial judge, good cause is shown. As to the taking of testimony, the word "may" is of course permissive.

doned him.'' It was held that under this wording of the section the mother could not compromise a claim when the parents were divorced, even though the mother had been awarded custody of the minor. (*In re Parrino* (1937), 24 Cal.App.2d 128 [74 P.2d 549].) The decision in the Parrino case prompted the Legislature in 1939 to reexamine section 1431 of the Probate Code. It amended the section to provide that a claim of a minor against a third person may be compromised by ''his father, or if his father is dead or the parents of said minor are living separate or apart and his mother then has care or custody of said minor then his mother.''[4] The amendment not only met the situation of the Parrino case but extended the mother's authority in other respects. The Parrino case problem could have been met by simply adding to the old phrase the words ''or for other reasons[5] the mother has custody of him.'' Instead, the Legislature substituted a complete new phrase. ▇ The broad language of the new phrase covers not only a case of desertion or abandonment but any case where the father and mother are living separate or apart,[6] whether the reason therefor be desertion, abandonment, agreement of the parties or divorce. ▇ Furthermore, by using the word ''custody'' the Legislature made it clear that if the mother and father are living separate or apart, the mother has authority to compromise if she has custody of the minor, whether she has that custody by virtue of the father's abandonment of his family, his inability or refusal to take custody, or by virtue of a court order awarding her custody.

▇ An award of joint custody with the father would not, however, be sufficient to give the mother authority to compromise. Even though living apart, the parents are both entitled to custody unless one is unable or refuses to take custody or has abandoned his or her family (Civ. Code, § 197), or unless the sole custody of the child has been awarded to

[4]A similar amendment was made in 1939 to section 376 of the Code of Civil Procedure, but was removed in 1949. (*Cf. Espinosa* v. *Haslam* (1935), 8 Cal.App.2d 213 [47 P.2d 479].)

[5]Under section 197 of the Civil Code, the mother is entitled to custody if the father is dead or has abandoned his family, or is unable or refuses to take custody.

[6]This language was probably suggested by Civil Code, section 198, which provides: ''The husband and father, as such, has no right superior to those of the wife and mother, in regard to the care, custody, education, and control of the children of the marriage, while such husband and wife live separate and apart from each other.''

one of them. (*Watkins* v. *Clemmer*, 129 Cal.App. 567, 574 [19 P.2d 303].) ■ A divorce decree that awards the parents joint custody leaves the right to custody as it was during the marriage when they were living together and gives neither a greater right than he or she had before the divorce.

■ Custody as used in section 1431 therefore means complete or exclusive custody.

■ Had the Legislature used only the word "custody" instead of the words "care or custody" there could be no doubt that it meant to limit the mother's authority to compromise to cases in which she has custody. Had it meant to make both care and custody a condition to the mother's authority to compromise it would have used the word "and" instead of the word "or."[7] The addition of the words "care or" seems therefore to indicate a clear legislative purpose not to limit the mother's authority to cases in which she has custody.

It has been suggested that the words "care or" were added to the statute only for cases in which custody has not already been adjudicated, to relieve the court, because of the difficult factual and legal questions that may be involved, of the necessity of having to determine whether or not the mother has custody of the minor. In such cases it is necessary to establish only that the mother has care of the minor, but if the custody has already been adjudicated, and the mother has not been awarded custody, she has no authority to compromise, even though she has the care of the minor. Under this interpretation, even if the father has not abandoned his family and is able and willing to take custody and the mother does not therefore have custody, she may nevertheless compromise if she has the care of the minor. If the reason she does not have custody, however, is a previous adjudication of custody, she cannot compromise even though she has the care of the minor. Thus in some cases "care" would be controlling, and it would be immaterial that the mother did not have custody of the minor. In other cases "custody" would be controlling, and it would be immaterial that the mother had "care" of the minor.

---

[7]The legislative history of Assembly Bill No. 1082, amending section 1431 in 1939, indicates that the statute was deliberately written in the disjunctive. As introduced, the bill provided that the mother could compromise a claim of a minor "if his father is dead or the parents of said child are living separate and apart and his mother then has custody." The bill as finally passed provided, "if his father is dead or the parents of said minor are living separate *or* apart and his mother than has *care or* custody." (Changes indicated by italics.)

The statute, however, no more admits of limiting "care" to some cases of care than it does of limiting "custody" to some cases of custody. The child may actually be taken care of in an institution or by a stranger or relative and yet the mother may have custody of it, including the right to its care, by virtue of the father's abandonment of his family or his inability or refusal to take custody. In such a case the mother would have the right to compromise, since the Legislature did not limit "custody" to custody derived from a court order. There is nothing in the statute to indicate that "custody" has a double meaning, that in cases in which it is necessary to establish custody before a compromise can be approved it is to be interpreted as meaning custody however derived, but for the purpose of rendering "care or" meaningless, it is to be interpreted as meaning custody derived from a court order when there is such an order. Had the Legislature meant to give either "care" or "custody" alternative meanings or to make either controlling in some cases and not in others, it would have said so. It placed these words in the statute unmodified by other words that would suggest that they were not of equal force or were not to be applied in the disjunctive in all cases. We are not at liberty to restrict and expand at will the application of these words or to seek hidden meanings in them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.

Plaintiff contends that "care or custody" mean the same thing and that the Legislature therefore did not give the mother authority to compromise a minor's claim in cases in which she does not have custody. The words "care or," however, were deliberately added, and cannot be regarded as superfluous, if a reasonable construction thereof will give effect to them and preserve all the other words of the statute.

Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings (Civ. Code, § 197) and the right to direct his activities and make decisions regarding his care and control, education, health, and religion. (*Lerner* v. *Superior Court*, 38 Cal.2d 676, 681 [242 P.2d 321]; see 2 Armstrong, California Family Law, p. 954.) These rights are exercised by both parents in an undivided home (Civ. Code, § 197) and differences between them are ordinarily resolved at home without the necessity

of invoking the aid of a court. ██ When the parents are living separate or apart, however, there are apt to be not only frequent differences of opinion with respect to any of the matters involved in custody, but frequent resort to courts for their settlement. In such cases a court may conclude that the best interests of the child and due regard for the interests of the parents require that one or the other be given complete custody of the child. It may conclude that such action would be unjust, and unable like Solomon to carve the child, it may carve out of the sum of custodial rights, certain rights to be exercised by each parent. Thus it is common practice in divorce cases for the court to award "legal custody" to one or both parents and "physical custody" to one parent with or without the right of visitation by the other parent, or physical custody may even be awarded to a third person, usually a relative. Decisions made in the exercise of the rights awarded are not necessarily final, for the court's orders are subject to modification. (Civ. Code, § 138; *Cooney* v. *Cooney*, 25 Cal.2d 202, 205 [153 P.2d 334], and cases cited.)

██ We believe the Legislature had this practice in mind when it used the words "care or custody." By "custody," it meant complete custody or all the rights involved in custody. By "care" it meant what has commonly been called "physical custody" or the custodial rights involved in the physical care and control of the child. The Legislature was also aware that in many cases fathers and mothers may be living apart where there have been no divorce or other proceedings adjudicating the right to custody. It may be unknown where the father is or uncertain whether or not he has forfeited his rights to custody. (See 2 Armstrong, California Family Law, p. 1006 et seq.) In such cases, if the mother has the care of the child, it is not necessary that there also be a judicial determination that she has his complete custody. ██ Thus, if the parents are living separate or apart, and the mother has the care or physical custody of the child, she may compromise his claims even though she may or may not also have his complete custody.

██ In the present case, the parents were living apart and the child lived with his mother. Under the divorce decree the parents had "joint custody and control" but the mother had "personal custody." There can be no doubt that the award of personal custody gave her the physical custody and care of the child. Having the care of the child, she had

authority under section 1431 of the Probate Code to compromise the claim in question.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

At the time this matter arose, section 1431 of the Probate Code provided, in part, that when a minor has a disputed claim for damages "his father, or if his father is dead or the parents of said minor are living separate or apart and his mother then has *care or custody* of said minor then his mother, shall have the right to compromise, or execute a covenant not to sue. . . ." (Emphasis added.)

Although it did not appear in the mother's petition for approval of the settlement of the minor's claim, or in the court's order of approval, that the father was dead, or that the child's parents were living separate or apart, or that she had the care or custody of the child, extrinsic evidence showed that the parents were divorced and that by court decree, they were given *joint* legal custody with "personal" custody in the mother.

A majority of this court has determined that the words "care or custody" were intended by the Legislature to give the mother authority to compromise a disputed claim if she had the care of the child whether or not she had custody of him. "The addition of the words 'care or' seems therefore to indicate a clear legislative purpose not to limit the mother's authority to cases in which she has custody." This holding, of course, makes a nullity of the court order awarding joint custody to both parents with physical, or personal, custody in one of them. With separated, or divorced, parents, it is impossible for both to have personal custody of the child— one must have it since, as pointed out in the majority opinion, the court cannot "like Solomon . . . carve the child." We have held (*Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321]) that custody includes the right to direct the child's activities and make decisions regarding his care, control, education, health and religion. The father here, by court order, had the rights above enumerated but a majority of this court interprets the statute so as to deprive him of a voice in making a major decision having to do with the child's future welfare, education and health. The majority concedes,

as indeed it must, that an award of joint custody with the father would not be sufficient to give the mother authority to compromise and yet it is held that because the mother had the person of the child in her care, she did have the authority. As I have heretofore pointed out, when parents are living separate and apart, the person of the child must be with one or the other but the decree giving them joint custody gives neither a greater right to control than either had before the divorce.

I am of the opinion that the use of the words "care or custody" by the Legislature was intended to take care of the situation where there was no court order giving custody to one, or both, parents or where the mother had the care of the child because the father had abandoned or deserted his family and his whereabouts were unknown. Under the interpretation of the majority, the mother, having physical custody and care of the child, could compromise a claim for him even though sole legal custody had been awarded to the father or even if she had the care of the child for a week, or a week end, with sole custody in the father. For example, it is said "If the reason she does not have custody, however, is a previous adjudication of custody, she cannot compromise even though she has the care of the minor. Thus in some cases 'care' would be controlling, and it would be immaterial that the mother did not have custody of the minor. In other cases 'custody' would be controlling, and it would be immaterial that the mother had 'care' of the minor." It appears to me that if there has been no formal adjudication of custody, and one parent has the care of the minor, because the other has abandoned it, that is a matter easily established in the petition for approval; or, on the other hand, if custody has been formally adjudicated, that matter also may be established. If one parent had legal custody, and the other had the temporary care of the child, the one having temporary care would hardly be the one authorized to compromise a claim which might have a far-reaching effect on the child's future. It is said that under this interpretation, if the parents are separated even if the father has not abandoned the child, and is ready and able to take custody but custody has not been adjudicated to the mother, she having the care of the child, may compromise his claim. Since the matter of the parents living separate and apart *should* appear in the petition for approval (Prob. Code, § 1431), the court could, before approving the settlement, require the father's consent

thereto since neither parent has a greater right than the other.

The words "care" and "custody" were used in the disjunctive to take care of two different situations and to interpret them as I think they should be interpreted would give effect to both words and would not make a nullity out of a court order awarding custody to one, or both, parents. As the majority interprets them, the word "custody" means nothing if the mother has the "care" of the minor.

Since it seems clear to me that the mother had no authority to compromise the claim of the minor, I would reverse the judgment.