# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

MARCH TERM, 1895.

———————

LEWIS C. POTTER et ux., appellants,

*v.*

ARTHUR E. BERRY, guardian &c., respondent.

A person of advanced years devised certain lands to his daughter, and, informing her and her husband of the fact, put them in possession, stating that he desired them to hold the property during his own life. A few years afterwards, the father having become a lunatic, his guardian notified the daughter and her husband to yield up the premises.—*Held*, that a court of equity would protect the daughter and her husband in their possession, thus giving effect to the purpose of the father as expressed during his sanity.

———

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Berry* v. *Potter*, *7 Dick. Ch. Rep. 664.*

In the latter part of the year 1886 or 1887, Samuel Dally, of the township of Woodbridge, then about seventy-eight years old, being about to make his will, asked his son-in-law, Lewis C. Potter, to make choice for his wife, Anna M. Potter, among the several parcels into which he had divided his real estate for distribution among his children by will. Potter chose a parcel consisting of three tracts, one of said tracts being a clay-bank, and Dally, assenting to such choice, made his will accordingly, which is still in existence, unrevoked. At the same time and incidental to the testamentary gift, Mr. Dally told his son-in-law, Potter, who was then and still is in straitened circumstances, to take possession of these tracts and make what he could out of them in the testator's lifetime, without compensation to the testator, and paying only the taxes.

Potter accordingly gave up another clay-bank, which he was then working, and took possession of the bank of his father-in-law, Dally, which he has ever since held and continued to work, as his only means of livelihood, down to the filing of the bill and subsequently, making large expenditures for draining and other permanent improvements of the clay-banks, in reliance upon said agreement of Mr. Dally.

During this period, at one time, when it was supposed that a railroad would be built through the property, Potter applied to his father-in-law for some writing, to confirm him in possession, at which Dally became quite irritated, and told him to go and make what improvements he saw fit, and he never should be disturbed.

In November, 1892, the complainant, Berry, was appointed by Middlesex county orphans court, guardian of said Samuel Dally, who had been duly found to be of unsound mind (and to have been so since the 1st day of June, 1892), under a commission out of the court of chancery, his mind having wholly failed from senile dementia.

On the 28th of February, 1893, said guardian served upon Potter and his wife notice to quit and deliver possession of said premises on the 1st day of June then next, to said guar-

Potter *v.* Berry.

dian, and further, to desist at once from digging any clay or sand on said premises or committing any other waste.

The Potters not having obeyed said notice, the bill in this cause was filed by said guardian, joining with him the said lunatic as complainant, for an injunction and account and general relief.

The defendants answered, setting up the above facts, and also, by way of cross-bill, prayed specific performance of the verbal agreement, and also that the arrangement should be continued as a scheme of benevolence initiated and persevered in by the lunatic, and on the principle that the court should do for him in the administration of his estate what, presumably, he would do himself if sane, alleging that he has ample income aside from the clay-bank for support of himself and his wife, who are all his family.

The decree appealed from is for an accounting and injunction and that defendants surrender possession.

*Mr. Alan H. Strong,* for the appellants.

*Mr. Ephraim Cutter,* for the respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

This case was decided in the court of chancery on the ground of its purely legal aspect. It was found that the defendants were in the occupation of the lands in question as the licensees of the lunatic, and that the licensor having become of unsound mind, and his guardian having notified them that such license was revoked, they were ordered by the decree to remove from the premises in question and to account for the profits.

Looking at the affair in this aspect, it is difficult to see how a court of equity could take cognizance of the case, for in such a situation an action of ejectment would appear to be the appropriate remedy. But, as a cross-bill has been incorporated in the answer, presenting for the consideration of the court of chan-

cery certain equities that enter into and modify the strict legal *status* of the transaction, it has appeared to this court to be the proper course to retain the case so as to give due force to such conscionable characteristics.

The equities referred to are those inseparable from the fact that the lunatic, who is represented by the respondent on this appeal, had expressed during his sanity, in an unquestionable form, his purpose that the appellants should remain in the possession of the premises in dispute during his own life. This property, by his will, he had devised to his daughter, and, in turning it over to her husband, he said, according to the testimony of the latter, "if I ever needed it, I need it now; he intended it for his daughter, and he wanted her to be benefited while he was alive." For several years before the father-in-law's lunacy, the appellants continued in the occupation of the premises, spending considerable money in putting them in a productive condition. The son-in-law and the daughter who were thus provided for had a large family and were in somewhat straitened circumstances, and the father who thus established them was possessed of an estate that fully warranted his generosity. The question, therefore, arises whether, the father having lost his mind, this benefaction of his towards his own child is to be frustrated and revoked by his guardian. No case has been observed in which a court of equity has permitted such a cruel dispossession. The cases strongly enforce the opposite doctrine. The general rule on this subject is that the court will do that, in these matters, which it is reasonable to believe the lunatic himself would do if he had the capacity to act. The decisions are numerous and all to this effect. The following are illustrative cases: *Ex parte Whitbread, 2 Meriv. 102; 11 Paige 257; 2 Barb. Ch. 326; 1 Myl. & C. 624.*

The result is that the appellants should not, under present circumstances, be disturbed in the possession and use of the property in question, and a decree should be entered to that effect.

Consequently, let the decree appealed from be reversed, and a decree entered in accordance with the foregoing view, with costs to be paid out of the estate.

*For reversal*—The Chief-Justice, Depue, Lippincott, Magie, Reed, Van Syckel, Bogert, Brown, Krueger—9.

*For affirmance*—None.