[Sac. No. 5395.   In Bank.—Aug. 7, 1941.]

Guardianship of the Person and Estate of FORREST M. HUDELSON, an Incompetent Person.   THIRZA L. HUDELSON, Appellant, v. BEN W. HUDELSON, as Guardian, etc., et al., Respondents.

Mark A. Joseph for Appellant.

Frank B. Collier and Hawkins, Hawkins & Cardozo for Respondents.

CURTIS, J.—Thirza L. Hudelson, the adult daughter of Forrest M. Hudelson, an incompetent person, has appealed

from a portion of an order which she procured, pursuant to section 1558 of the Probate Code, to grant her from the surplus income of her father's estate a monthly allowance as necessary maintenance. That part of the order from which this appeal was perfected reads as follows: "and provided, further, that any sum or sums of money paid by the guardian to petitioner under the provisions hereof shall constitute an advance against any inheritance petitioner might receive upon the death of her father, and the guardian of said incompetent shall keep an account of all sums so paid." It is contended that the above quoted portion of the order is unauthorized by law and void.

Upon the hearing of the application for an allowance from the estate of petitioner's father, the court found that Thirza L. Hudelson is the daughter and next of kin of Forrest M. Hudelson, an incompetent person; that there is in the latter's estate a small surplus income not used for his support and maintenance; that if the ward were of sound mind, he would have contributed to his daughter's support; that the petitioner was a resident in the ward's household, and that a portion of the surplus income of the estate should be paid to the daughter. It was then ordered that Thirza L. Hudelson be paid $50 per month "until the further order of this court," in addition to her room and board, while she remains in her father's household, or in lieu thereof, the sum of $100 per month if she resides elsewhere. It was further provided that all sums so paid by the ward's guardian shall be considered advancements to petitioner against any inheritance which she might receive from her father's estate at the time of his death, and that unless the petitioner shall elect in writing, within thirty days from the date of the order, whether she will remain in her father's home or live elsewhere, the petition will be deemed to have been denied. Although the written notice of petitioner's election is not part of the record on this appeal, which was taken from the judgment roll alone, it is conceded that within the time limit specified she did execute the necessary document evidencing her decision to live at home, and thus determining the amount of her allowance to be $50 per month.

The authority of the superior court to order payments from the funds of an incompetent to a next of kin is derived from section 1558 of the Probate Code, which provides: "On the application of the guardian or next of kin of an insane or in-

competent person, the court may direct the guardian to pay and distribute surplus income, not used for the support and maintenance of the ward, or any part of such surplus income, to the next of kin whom the ward would, in the judgment of the court, have aided, if said ward had been of sound mind. The granting of such allowance and the amounts and proportions thereof shall be discretionary with the court, but the court shall give consideration to the amount of surplus income available after due provision has been made for the proper support and maintenance of the ward, to the circumstances and condition of life to which the ward and said next of kin have been accustomed and to the amount which the ward would, in the judgment of the court, have allowed said next of kin, had said ward been of sound mind.''

██ Appellant contends that this section strictly limits the discretionary power of the court to a determination of whether under the particular circumstances an allowance should be made and, if so, the amount thereof, and that it does not confer authority to impress payments permitted upon the prospective interests of next of kin, as advancements. The respondents, all of whom are children of the incompetent and one of whom also acts as the guardian, dispute this interpretation and insist that the language of this provision is sufficiently broad to empower the court, in the course of its exercise of control over adjudged incompetents and their property, to grant allowances from the excess income of such estates, with or without conditions, as the facts of each case recommend. Thus, the crux of the argument presented here respecting the validity of the portion of the order which is the basis of this appeal, is whether the court exceeded its jurisdiction in making the challenged ruling. The point in controversy is, of course, solely one of statutory construction.

Brief reference to the historic development of this branch of the law reveals that the authority of the courts to make allowances from an incompetent's estate is the logical outgrowth of their wide powers in the disposition and management of such person's property. The doctrine is well established in England, since the decision of Lord Eldon in *Ex parte Whitbread, in the Matter of Hinde*, 2 Merivale 99, 35 Eng. Reprint 878, decided in 1816, that the chancellor may, under proper circumstances, grant to needy relatives part of the surplus income of an incompetent. In approving such

payments, the court will act with reference to the incompetent and for his benefit as it is probable that he would have acted for himself, if he were of sound mind. (Shelford on the Law of Lunatics (2d Ed.) 205; 21 Halsbury's Laws of England (2d Ed.), par. 579, p. 332.) The American rule on this subject, based upon like considerations, is well stated in 32 Corpus Juris 708, as follows:

"Ordinarily the court will not make allowances for the support of persons to whom the ward owes no duty of support where it is not established that the ward would have done so if sane, even though the estate is sufficiently ample; and this rule has been applied to collateral kindred. However, the court may make allowances out of the ward's surplus income for the support of persons whom he would naturally wish to support, although under no legal obligation to do so; and this rule also has been applied to collateral kindred. Great caution should be exercised in respect to making allowances to persons for whom the ward is not legally bound to provide; and in several cases it has been said that the practice ought rather to be narrowed than extended. The amount and proportions of such allowances, when made, are entirely within the discretion of the court. In all such cases the court should see what the ward would himself do if he were sane, and act accordingly."

We shall now proceed to note a few of the English authorities cited by respondents as precedents upholding their argument that the granting of allowances and the appendage of conditions thereto rest solely in the sound discretion of the court. First in importance as well as in chronological order is *Ex parte Whitbread, supra,* where in making provision for the petitioning blood relative, Lord Eldon announced the general principle which has been the basis of all subsequent decisions on the subject: "It is not because the parties are next of kin of the lunatic, or, as such, have any right to an allowance, but because the court will not refuse to do, for the benefit of the lunatic, that which it is probable the lunatic himself would have done." Consonant with this view, Lord Cottenham in *In re Earl of Carysfort,* Cr. & Phill. 76, 41 Eng. Reprint 418, allowed a retiring pension out of the income of the estate of the lunatic to an old servant, being "satisfied that the Earl of Carysfort would have approved if he had been capable of acting for himself." Then in *In re Croft,* 32 L. J. Eq. (N. S.) 481, an annual allowance was made to the

first cousin of the lunatic, but it was ordered that the sum so advanced be brought into account against the petitioner's expectant share of the estate. The last of these pertinent cases called to our attention is *Re Sparrow,* 20 Ch. D. 320, wherein the petitioner, who had the remainder in the estate of which the lunatic was life tenant, was given an allowance conditioned upon its becoming a charge upon the remainder when petitioner should come to enjoy it. This highly persuasive line of decision, standing unchallenged as representative of the prevailing English rule of the court doing that which it is probable the lunatic would have done if competent, furnishes substantial support for respondents' contention that whether or not an accounting is to be required from the applicant whose petition for an allowance is granted, is discretionary with the court, after careful inquiry as to what is best and most advantageous for the incompetent.

The American view regarding allowances as advancements is stated in 32 Corpus Juris 707, as follows:

"Under the general rule allowances may, and should, be made for the support of the wife and children of an insane person, according to their circumstances. *Although adult children are not ordinarily entitled to support, if allowances are made to adult children competent to support themselves, this generally will be on condition that such allowances shall be considered as advancements upon the final distribution on the ward's death."* (Italics added.)

Exemplary of this doctrine is the early case of *In re Willoughby,* 11 Paige (N. Y.) 257, wherein the chancellor, after fully considering the power of a court of equity to administer the estate for the maintenance and care of those whom the incompetent is under no legal obligation to support, concluded at page 259: "But my present recollection is, that in all those cases, I required the adult children, who were competent to support themselves, to give a stipulation that the amounts advanced to them respectively should be brought into hotchpot, upon the death of the lunatic; if any part of his personal estate should come to them under the statute of distributions."

The almost total lack of judicial expression by the courts of this country on the precise point involved here confirms the opinion of counsel that the question is, to a great extent, a novel one. Both appellant and respondents direct our

attention to the well considered case of *In re Farmers' Loan & Trust Co.,* 181 App. Div. 642 [168 N. Y. Supp. 952], 225 N. Y. 666 [122 N. E. 880], where it was held that allowances out of the estate of an insane person for the support of remote kin were to be treated as absolute gifts, and not as advancements. However, it was there recognized that it would always be within the discretion of the court to require an accounting of the sums granted, as a condition to the granting of the petition, and the following cogent language appearing at page 957 of that opinion fortifies the respondents' position:

"Now, then, if these allowances were gifts, as it must be apparent they were, they belonged to the donees when paid. *It was, of course, entirely competent for the Supreme Court, in equity, to impose as terms for granting the petitions for equitable relief a stipulation that the petitioners would agree to be chargeable with the amount of the allowances in the event that they subsequently by any chance succeeded to an interest in the estate; but in none of these orders was any such provision made. In the absence of any such provision, these allowances, when so paid, were the absolute property of the donees.*" (Italics added.)

Thus, it appears from the foregoing review of authorities that the courts, in the course of their administration of the estates of incompetents and independent of any statutory authority, have exercised jurisdiction to grant allowances with or without conditions, as the facts warranted.

The next inquiry relates to the effect of the enactment in 1935 of section 1558 of the Probate Code. Appellant insists that the authority to grant such allowances now depends upon this positive statement of law, and that the statute confines the court's exercise of this right within the precise limits established thereby. Accordingly, it is her position that in the absence of an express provision empowering the court to direct that payments to next of kin should be charged against their future inheritances, the court is without power so to do, and that portion of the order subject of this appeal must be declared void. But this rigid interpretation of the scope of the statute is not reasonable in view of the broad terms in which this section is couched, demonstrating that the purpose of this enactment was to supplement and confirm the inherent jurisdiction of the court, acting in equity, to exercise full control over incompetents and their property. In addition,

the statute set up a standard for the guidance of the court in its ruling upon an application for aid to next of kin of the ward: To pay and distribute any part of the "surplus income" of the incompetent not needed for his support and maintenance, to the next of kin whom the ward would, "in the judgment of the court," have aided, if said ward had been of sound mind. In so doing the court acts for the incompetent in reference to his estate as it supposes the incompetent would have acted if he had been of sound mind, which principle coincides with the doctrine of both the English and American authorities, as reference to the above discussed cases will indicate. It reasonably follows that the court in making allowances may attach conditions if it finds that the ward, had he the capacity to act, would have imposed them. If this were not possible, the court in many instances would be constrained to refuse the application for payments rather than grant it without terms. The statute's endorsement of a policy of flexible procedure, resting in the sound discretion of the court, permits recourse to principles of equity responsive to the interests of both the ward and next of kin.

Appellant, however, insists that this construction of section 1558 conflicts with the express terms of section 1050 of the Probate Code, providing that advancements to an heir may be established only by proof of that intention on the part of the testator or donor expressed in writing, or by written acknowledgment thereof signed by the donee. It is her contention that in the instant case there has not been compliance with either of the alternatives mentioned in the statute as satisfactory evidence of the creation of an advancement: (1) that there is no proof of intention on the part of this donor, for an incompetent person is incapable of either consenting to the payments or legally designating them as advancements; and (2) that the written notice of election signed by appellant announces merely her intention to continue to live in her father's home and contains no reference to her acceptance of the monthly allowance on the condition prescribed in the order. This latter statement, of course, must be accepted as true, for the contents of the notice are not part of the record before us, and since the express terms of the court's order required only that a written declaration of appellant's choice of residence be executed within thirty

days subsequent to said ruling, we cannot assume that appellant voluntarily included in this instrument an acknowledgment that the payments might be considered a charge against her prospective share of this estate. However, it is our opinion that appellant's first proposition is entirely without merit, for the court's written order expressing the intention of this donor to create an advancement fully met the requirements of section 1050. The incompetent not having legal capacity to act for himself, the court acted for him, and its order must be taken in lieu of the written expression of the incompetent donor of his intention that these monthly allowances shall be considered an advancement to appellant. This conclusion is in complete accord with the general principle that the court, acting in equity for the protection of the interests of the incompetent and after full consideration of the evidence before it, is free to exercise its sound discretion with reference to the disposition and management of the estate.

From these premises our decision must be that the court had authority to allow these payments from the surplus income of the incompetent on condition that they "shall constitute an advance against any inheritance petitioner might receive upon the death of her father."

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., *pro tem.*, concurred.

Appellant's petition for a rehearing was denied August 28, 1941.