STATE OF NORTH CAROLINA EX REL. NORTH CAROLINA UTILITIES COMMISSION, v. C. O. STORY, BELTON JACKSON, F. W. BRADLEY, JOHN H. BRADLEY, BOB PRICE, J. B. PACE, MOSES BRADLEY, HAROLD C. CASE, D. P. HENDERSON, F. B. EDWARDS, JACK STORY, R. V. THOMPSON, MRS. ALLEN THOMPSON, MISS MARGARET CAUSBY, GAITHER JOHNSON, MRS. J. B. THOMPSON, HORACE THOMPSON, H. R. THOMPSON, MRS. GAITHER JOHNSON, L. R. NEWMAN, MARK CONSTANCE, AND CURTIS GARRETT.

(Filed 10 November, 1954.)

**1. Eminent Domain § 6: Hunting and Fishing § 1—**

The Wildlife Resources Commission has been delegated the power to acquire land for game farms or game refuges in the public interest, G.S. 113-84, G.S. 143-237, *et seq.*, but the public need for such project in a particular locality must first be established by a certificate of public convenience and necessity from the North Carolina Utilities Commission, G.S. 40-53, before land can be taken by condemnation.

**2. Eminent Domain § 4—**

Only public necessity justifies the taking of land from a citizen without his consent.

**3. Hunting and Fishing § 1—**

The Wildlife Resources Commission, in the discharge of its important duties in the public interest, can act only by resolution passed in a legal meeting of its members sitting as a commission, which resolution should be recorded in its minutes, and thus become the best evidence of the Commission's actions.

**4. Same: Eminent Domain § 6—**

Resolution of the Wildlife Resources Commission authorizing its director to negotiate for the purchase of certain lands and setting up a certain sum in its budget therefor, even if it be construed to authorize the director to actually purchase the lands designated, is not authorization to him to institute proceedings to condemn any part of the lands. Such resolution cannot support a finding that an application for certificate of public convenience and necessity for the acquisition of the land was filed by the Wildlife Resources Commission so as to confer jurisdiction on the Utilities Commission to issue the certificate.

APPEAL by respondents from *Moore, J.,* heard by consent in McDOWELL.

This proceeding originated before the Utilities Commission of North Carolina on an application filed in the name of the North Carolina Wildlife Resources Commission for a certificate of public convenience and necessity as authorized by G.S. 40-53. The Wildlife Resources Commission alleges that in co-operation with the Federal Government it has already under option to purchase approximately 8,000 acres of land in Polk and Henderson Counties, known as the Green River Wildlife Management Area, and that approximately 5,000 acres adjoining are already

under lease. The application alleges further that the acquisition of the land described and owned by the respondents is necessary to complete the area, and when so completed will enable the Wildlife Resources Commission to carry out one of its primary objectives, and to this end "it is in the public interest that the petitioner exercise its rights of eminent domain under the Constitution and laws of the State of North Carolina in acquiring the lands herein described as a public works project." The respondents appeared before the Utilities Commission and filed a protest to the issuance of the certificate.

The Utilities Commission, after notice, conducted hearings at which evidence was introduced in behalf of both the Wildlife Resources Commission and the respondents. The latter made an oral motion to dismiss the application for (1) lack of jurisdiction of the Utilities Commission to grant the certificate, (2) the application for the certificate was not authorized by the North Carolina Wildlife Resources Commission.

Upon the request of the respondents, the Utilities Commission stated findings of fact and conclusions of law, to which respondents filed exceptions. The Utilities Commission ordered the certificate issued. Utilities Commissioner McMahan dissented. The respondents filed a petition to rehear, which was denied. The respondents appealed to the Superior Court, and the Utilities Commission, as provided by G.S. 62-26.6, certified the appeal and record to the Superior Court of Polk County on 16 June, 1954. By consent of all the parties the appeal was heard by Moore, J., in McDowell County. After hearing, Judge Moore overruled all exceptions and affirmed the order of the Utilities Commission. The respondents excepted and appealed.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the petitioners, appellees.*
*Joyner & Howison for respondents, appellants.*

HIGGINS, J. Two questions are presented by this appeal: First, does the North Carolina Utilities Commission have authority to issue to the North Carolina Wildlife Resources Commission a certificate of public convenience and necessity for the establishment of the Green River Game Management Area in Polk and Henderson Counties? Second, if so, did the Wildlife Resources Commission authorize the application for the certificate?

The General Assembly of 1925 enacted Chapter 122, now G.S. 113-2, creating a Department of Conservation and Development. Among its duties were declared to be, to aid (a) in the promotion of the conservation and development of the natural resources of the State, (b) to promote a more profitable use of lands, forests and waters. The control and man-

agement of the Department was vested in the "Board of Conservation and Development," consisting of 15 members appointed by the Governor. The Act creating the Board provided for a director whose duty it was to make surveys of the economy and natural resources of the State and to perform such other duties as the Board might prescribe, all under the direction of the Board.

Succeeding sessions of the General Assembly added new duties to the Board, among them that of collaborating with "the several United States Government bureaus and other sources as may assist in carrying out the objects of the Department." Chapter 486, section 4, enacted in 1935, now G.S. 113-84, provides among other things, that the Board may "acquire by purchase, grant, condemnation, lease, agreement, gift or devise, lands or waters suitable for the purposes hereinafter enumerated:

"(a) Game farms or game refuges.

"(b) Lands or waters suitable for game, bird or fur-bearing animal restoration, propagation or protection.

"(c) For public hunting or trapping areas to provide places where the public may hunt or trap in accordance with the provisions of law or the regulations of the Board."

Section 5 provides that the Board may "enter into cooperative agreements with Federal agencies, municipalities, corporations, organized groups of land owners, associations and individuals for the development of game, bird, or fur-bearing animal management and demonstration projects."

In 1947 the General Assembly enacted the North Carolina Wildlife Resources Law, now G.S. 143-237 to 143-254.1. G.S. 143-240 creates the North Carolina Wildlife Resources Commission, consisting of nine members to be appointed by the Governor, and subsection 247 provides that the duties, powers, jurisdiction and responsibilities theretofore vested by statute in the Department of Conservation and Development, the Board of Conservation and Development, the Director of Conservation and Development, the Division of Game and Inland Fisheries, the Commissioner of Game and Inland Fisheries, or any predecessor organization, board, commission or commissioner, or other official relating to the wildlife resources of North Carolina, excluding all commercial fish and fisheries, be transferred to and vested in the North Carolina Wildlife Resources Commission. The Act provides for the taking over of the duties from the organization of the latter commission appointed by the Governor.

The application filed before the North Carolina Utilities Commission recites that the Wildlife Resources Commission in co-operation with the Federal Government has under option to purchase approximately 8,000 acres of land in Polk and Henderson Counties, comprising a project

known as the Green River Wildlife Management Area. The application further alleges that 5,000 acres are already under lease to the North Carolina Wildlife Resources Commission. The application further alleges that the lands of the respondents are necessary for a more complete and satisfactory development of this area for the purposes above mentioned in order that the Wildlife Resources Commission may better protect, propagate and preserve the game animals, birds, fur-bearing animals, and fish in this area. The application states that the Wildlife Resources Commission desires to acquire respondents' property in the manner provided in Article 3, Chapter 40, General Statutes of North Carolina, entitled "Public Works Eminent Domain Law." The certificate is requested in order that the Commission may exercise its right of eminent domain and take the property. The certificate is necessary under G.S. 40-53, which is as follows:

"*Necessity for certificate of public convenience and necessity from Utilities Commission.*—Notwithstanding any finding of public convenience and necessity, either in general or specific, by the terms of this article, the right of eminent domain shall not be exercised unless and until a certificate of public convenience and necessity for such project has been issued by the Utilities Commission of North Carolina, and the proceedings leading up to the issuing of such certificate of public convenience and necessity, and the right to appeal therefrom shall be as now provided by law and said rights are hereby expressly reserved to all interested parties in said proceedings. In addition to the powers now granted by law to the Utilities Commission of North Carolina, the said Utilities Commission is hereby vested with full power and authority to investigate and examine all projects set up or attempted to be set up under the provisions of this article and determine the question of the public convenience and necessity for said project."

In construing the above section, *Justice Denny,* in the case of *In re Housing Authority of the City of Charlotte,* 233 N.C. 649, 655, 65 S.E. 2d 761, says: "We think the finding of public convenience and necessity, either in general or specific terms, as pointed out in G.S. 40-53, has reference to any finding made 'either in general or specific' terms by the Legislature and set forth in the Housing Authorities Law, which findings shall not be sufficient to warrant the exercise of eminent domain in connection with any project authorized thereby. But a certificate of public convenience and necessity for such project must be obtained from the Utilities Commission—that is, the public need for such a project in a particular community must be made to appear and a certificate of public convenience and necessity must be obtained before the petitioner may proceed to condemn property for such project."

From the foregoing, it seems clear that the Wildlife Resources Commission has authority to undertake the project outlined in the application in collaboration with the Federal Government. However, before lands for the purpose can be acquired by condemnation under the Eminent Domain Law, a certificate of public convenience and necessity is required from the North Carolina Utilities Commission. The Utilities Commission, upon a proper application and showing, has authority to issue the certificate.

The remaining question is whether the Wildlife Resources Commission authorized the application for the certificate of public convenience and necessity. The respondents challenge the application for the certificate upon the ground that the application was not authorized by the Wildlife Resources Commission. The evidence on this question consists of excerpts from the minutes of a meeting of the Commission held on 21 January, 1952, as follows: "Mr. Connoly moves that the Director be authorized to negotiate for the purchase of the Green River Mountain and Dugger Mountain areas, using funds appropriated at the November 16, 1951, meeting for the purchase of the South Mountain tract. Mr. Kennett seconded the motion. When put to a vote, the motion carried unanimously." The only other reference in the Commission's records consists of Item 2800 in the Budget for the Year 1952-1953, as follows: "Land acquisition (Green River-Polk County Deer Restoration Area) $75,-000.00."

The question was raised in the hearing by the cross-examination of Mr. Barick, Chief of the Game Division, North Carolina Wildlife Resources Commission, who examined the minutes of the commission and testified to the above quotations as coming from its records. Respondents requested the Utilities Commission on this evidence to find "that the application filed in this matter on behalf of the North Carolina Wildlife Resources Commission was filed and presented to this Commission without any resolution authorizing the same by the members of the Wildlife Resources Commission and without authority given by the Commission. And upon this finding to conclude as a matter of law that the application for the certificate was without authority." The Utilities Commission refused to find as requested, but did make the following finding:

"1. The Commission finds as a fact that the Wildlife Commission authorized the acquisition of the area in question (Resolution passed at a regular meeting of said Wildlife Commission on January 21, 1952) from funds appropriated at its meeting on November 16, 1951, and that in its Budget for the fiscal year 1952-53 and also in its Budget for 1953-1954 it set aside $75,000 for the purchase of the area known as the 'Green River, Polk County Deer Restoration Area'; that this proceeding was instituted at the direction of Mr. Patton, Executive Director of said

Wildlife Commission, and the application was signed by Mr. Whitmire, attorney for said Wildlife Commission. The Commission further finds as a fact that although the minutes of said Wildlife Commission fail to specifically authorize the institution of this proceeding, that, by approving the acquisition of the land and the appropriation of the money to pay for same, that the implied authority is inescapable that said director should proceed in every way provided by law to consummate the acquisition of the land, either by purchase or by such other means as the law provides, one of which is to obtain a certificate of convenience and necessity to condemn under the Eminent Domain Statute, which latter course the director has followed in the instant case. All of said findings of fact as requested by the protestants in paragraph 2 inconsistent with the foregoing are denied."

From this finding the Utilities Commission concluded as a matter of law that the application was properly filed. The respondents appealed to the Superior Court. Record was transmitted in due course to the Superior Court of Polk County and heard by consent in McDowell County. On the hearing all of respondents' objections and exceptions were overruled, the order of the Utilities Commission granting the certificate was upheld, whereupon the respondents filed exceptions, made assignments of error, and appealed to the Supreme Court.

The facts found by the Utilities Commission do not warrant its conclusion of law that the application for the certificate of public convenience and necessity was filed by the North Carolina Wildlife Resources Commission. The certificate is the first step in the exercise of the sovereign power of condemnation. This first step leads, and is intended to lead to the taking of property of the citizen without his consent and often against his will. Only necessity justifies a taking under such circumstances. That just compensation be made for that which is taken does not make allowance for the sentimental values the citizen attaches to his home. He must submit, and it is proper that he should submit to inconvenience because of the public necessity and for the public good. The Wildlife Resources Commission has been given the power to take land by condemnation when the Utilities Commission has issued a certificate of public convenience and necessity.

The Wildlife Resources Commission is a body of nine members. It is one of the important agencies of the State. It is charged with important duties and with expending large sums of public money. Obviously it can act only by resolution duly passed in a legal meeting. The members must meet as a commission and be in session as such to give validity to its acts. The acts of the Commission must be recorded in its minutes and when so recorded the minutes become the best evidence of the commission's actions.

The Commission's records bearing on the question for decision here disclose that the Commission authorized the Director to negotiate for the purchase of Green River Mountain and Dugger Mountain Areas, and that $75,000 was set up in its budget for that purpose. The wording of the resolution raises a serious question as to whether the Director was authorized to purchase Green Mountain. Technically, he was authorized to negotiate only. It seems reasonable to assume from the resolution that the Commission did not expect the Director to purchase Green Mountain, but only to negotiate for the purchase and report the result of his negotiations for the final determination of the Commission. Nevertheless, if we assume the authority was given not only to negotiate but actually to purchase, it by no means follows that the Director was authorized to invoke the sovereign power of eminent domain and initiate a proceeding to take the property by making application for the certificate. For the Commission to authorize the purchase is one thing—to authorize condemnation is something else. Under proper circumstances the Commission can purchase when the land is desirable for its legitimate purposes. Only the force of necessity gives it the right to condemn.

The conclusion of the Utilities Commission that the application for a certificate of public convenience and necessity was authorized by the Wildlife Resources Commission is not supported by its findings of fact. The Commission was not justified in issuing the certificate because of the lack of a proper application. The Superior Court committed error in affirming the Commission's orders. The respondents' assignment of error No. 3 must be sustained.

Reversed.