IN THE MATTER OF: THE TRUSTEESHIP OF SARAH GRAHAM KENAN.

IN RE: PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (Pursuant to Chap. 111, P. L. 1963).

AND

IN THE MATTER OF: THE TRUSTEESHIP OF SARAH GRAHAM KENAN.

IN RE: PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (Pursuant to Ch. 112, P.L. 1963).

AND

IN THE MATTER OF: THE TRUSTEESHIP OF SARAH GRAHAM KENAN.

IN RE: PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (Pursuant to Chap. 113, P.L. 1963).

(Filed 17 January 1964.)

1. **Constitutional Law §§ 2, 6—**

Within its compass the Constitution is supreme and any governmental act which violates its mandates or which thwarts the power granted to the United States is void.

2. **Constitutional Law § 23—**

The constitutional prohibitions against the taking of private property without due process of law limits the powers of the executive and judicial branches as well as the legislative branch, and protects incompetents equally with persons of sound mind. Constitution of North Carolina, Art. I, § 17; Fifth and Fourteenth Amendments to the Constitution of the United States.

3. **Same—**

The constitutional prohibitions against the taking of private property except by due process of law preclude the Legislature from sanctioning the taking of a person's property except in satisfaction of a legal obligation or for a public purpose upon the payment of just compensation.

4. **Same;    Insane Persons § 4—**

A court of equity may not, either in the exercise of its inherent jurisdiction or with legislative sanction (G.S. 35-29.1, .4, .5, .10, .11, .16), authorize the taking of income or corpus of the estate of an incompetent for a purpose other than the incompetent's own support and the discharge of the incompetent's legal obligations.

5. **Same—    Court may sanction gift to charity by trustee of incompetent only upon finding that incompetent, if sane, would make such gift.**

A court of equity may not authorize the fiduciary of an incompetent to make gifts to charity either from the income or the corpus of the incompetent's estate when such gifts are based upon the fiduciary's sense of moral fitness or judgment in the proper management of the estate in view of the rate of income tax paid by the estate or the difference between the rate of gift and inheritance taxes, since such order would amount to a taking of property in derogation of the incompetent's constitutional rights, but the court may authorize the fiduciary to make gifts to charity only on a finding based upon the preponderance of the evidence at a hearing duly had after notice that the incompetent, if then of sound mind, would make such gifts.

6. **Same;    Appeal and Error § 49—**

Where upon the hearing by a court of equity of a fiduciary's application for authority to make charitable gifts from the estate of his incompetent, there is no evidence that the incompetent, if sane, would make such gifts, order authorizing the fiduciary to make such gifts must be reversed, since such order must be predicated upon a finding based on evidence that the incompetent, if sane, would have made such gifts.

HIGGINS, J., dissenting.

PARKER and SHARP, JJ., join in dissent.

APPEALS by W. C. Murchison and Louis A. Burney as guardians ad litem and by W. R. Kenan, Jr. and A. R. MacMannis as trustees from *Mintz, J.,* June 1963 Civil Session of NEW HANOVER.

Sarah Graham Kenan (hereafter Mrs. Kenan), a resident of New Hanover County was, in May 1962, found by a jury to be "physically and mentally incompetent from want of understanding to manage her affairs by reason of physical and mental weakness on account of old age, disease or other like infirmities." Based on this finding the clerk of the Superior Court adjudged her incompetent and, as authorized by G.S. 35-2, appointed her nephew, Frank H. Kenan, as trustee "to con-

trol and handle the person and entire estate of Sarah Graham Kenan wheresoever located."

In March 1963 the Legislature enacted three statutes, c. 111, 112, and 113, S. L. 1963, codified as G.S. 35-29.1 — 29.4, 29.5 — 29.10, and 29.11 — 29.16. These statutes authorize a guardian or trustee of an incompetent with the approval of the resident judge of the Superior Court to make gifts for religious, charitable, or educational purposes. C. 111 permits gifts to be made from income, c. 112, from principal, and c. 113 permits the trustee to surrender the right to revoke a trust created by the incompetent and make a gift of the reserved life estate.

In May 1963 Frank H. Kenan as trustee of Mrs. Kenan filed three petitions with the clerk of the Superior Court. In the first he sought authority to make gifts aggregating $731,600 from the income of his ward, in the second, a gift of $100,000 from the principal, and in the third, authority to surrender the right reserved by incompetent to revoke a trust created by her in 1956 and to donate to designated institutions the income reserved for her life.

Summarized, the petitions allege: Mrs. Kenan is and was in 1962 a resident of New Hanover County. She was there adjudged incompetent. Petitioner was appointed as trustee of her person and estate. It is improbable that she will hereafter have mental capacity to manage her affairs. She is a widow. She has no descendants and will never have any. Her estate, worth many millions, consists in part of a revocable inter vivos trust created by her in December 1956. Her annual income for the past five years has substantially exceeded $2,000,000. Her federal taxable income for 1963 is estimated to exceed $2,800,000. Her federal and state income taxes for 1963 are not expected to exceed $2,000,-000. Expenditures for her maintenance in the five years preceding 1962 averaged $31,000. They were $35,500 for the year 1962, and are expected to amount to that sum in 1963. After the payment of all taxes and other expenses of the incompetent and the making of the gifts as proposed, the remaining income would be adequate to maintain Mrs. Kenan in the manner she is accustomed to and in excess of twice the sums expended annually for her maintenance for the preceding five years. The bulk of Mrs. Kenan's estate consists of stocks and bonds deposited for safekeeping in New York. She owns her home in Wilmington and other tangible property located in North Carolina. She has bank accounts in North Carolina and New York. On the same day in 1955 she executed two related testamentary writings. One, designated her North Carolina will, disposes of property located here; the other, designated her New York will, disposes of property located in that state. Each of the proposed donees meets the requirement of the particular statute under which petitioner seeks authority to act.

The gifts proposed to be made from income total $731,600, from principal, $100,000, and from the surrender of incompetent's right to receive the income from the 1956 trust created by her, approximately $300,000 per annum for her life.

The petition seeking authority to make gifts from income contains allegations in the language of G.S. 35-29.2(1); the petition seeking authority to make a gift from principal contains allegations in the language of G.S. 35-29.6(1). The proceeding to surrender the right to revoke the inter vivos trust and make a gift of Mrs. Kenan's right to receive the income for her life not only seeks to make a gift to tax-exempt beneficiaries but would impose a tax liability on Mrs. Kenan's estate. Petitioner, in that proceeding, alleged:

"(A) That all gift taxes which will be incurred by reason of the making of said trust irrevocable and the making a gift of the lifetime interest to charity are properly payable out of the principal assets of the estate of the incompetent rather than from the principal assets held in said revocable inter vivos trust and no part of said gift taxes should be paid out of said revocable inter vivos trust assets; that the long term effect under the present Internal Revenue Code and Rulings would enable the estate of the incompetent to pay substantially less in gift taxes than would be incurred in estate and inheritance taxes by reason of the assignment of income and declaration of irrevocability because gift taxes are computed at a lower rate compared to the maximum rate of estate and inheritance taxes and are a credit against any estate and inheritance taxes which might be payable with respect to the trust estate and because the amount paid in gift taxes will not be subject to estate or inheritance taxes. In addition, it would save executors' fees and commissions on the amount of the gift taxes and administration costs in connection therewith and would constitute sound, wise, progressive, needed and essential estate planning in the best interests of the incompetent and of those who stand to take this estate upon her death and is within the discretionary authority of the Court and it is requested by your petitioner that he be permitted to raise sufficient funds for the purpose of paying said gift taxes by selling, or borrowing on the security of, such of the securities as your petitioner shall determine which are owned by the incompetent and are now held by Morgan Guaranty Trust Company of New York in custody in New York, New York. That in all probability, the incompetent, if competent, would take the necessary steps to accomplish these

purposes. To allow the matter to remain in status quo with reference to the trust would serve only to needlessly deplete the estate and would benefit nobody except the executors or administrators of the incompetent's estate and the taxing authorities.

"(B) The petitioner respectfully petitions the Court to effectuate this sound estate planning, based on the tax and other economies involved and for the preservation of the estate of the incompetent which the incompetent would do for herself if competent, and eliminate what would otherwise be an unjust penalty and treatment of an incompetent and which would not befall a competent person making a sound estate plan."

Notice and summons were served on (1) those who would take as heirs or distributees if Mrs. Kenan had died when the petitions were filed, (2) those who would take as legatees or devisees under her wills, (3) the trustees of the inter vivos trust created in December 1956, and those beneficially interested in the trust. Guardians ad litem were appointed for Mrs. Kenan and minor or other incompetent beneficiaries.

Murchison, guardian ad litem for Mrs. Kenan, and Burney, guardian ad litem for minors and unborn parties, by answers challenge the right of the trustee to make the proposed gifts. They allege the statutes (c. 111, 112, and 113, S.L. 1963) violate provisions of the Constitutions of North Carolina and of the United States. Among other constitutional rights asserted to be violated if the gifts are authorized are Art. I, sec. 17 of the Constitution of North Carolina and the Fifth and Fourteenth Amendments of the Constitution of the United States.

W. R. Kenan, Jr. and A. R. MacMannis, two of the trustees of the trust created by Mrs. Kenan in 1956, aver they seek to faithfully perform the duties Mrs. Kenan imposed on them. Their answer to sec. 15 of the petition filed under the provisions of c. 113, S.L. 1963, reads:

"(A) Answering the allegations of paragraph 15(A) of the Petition, these respondents admit that no part of the gift taxes should be paid out of the revocable inter vivos trust assets. With regard to the other allegations of paragraph 15(A), these respondents deny any knowledge or information sufficient to form a belief as to the truth thereof, except as to such allegations which may be questions of law, which they are informed and believe that they are not required to answer.

"(B) These respondents deny any knowledge or information sufficient to form a belief as to the truth of allegations of paragraph 15(B) of the petition."

Sec. 2 of their further answer reads:

"That your respondents are informed and believe that the trust agreement dated December 26, 1956, is a validly executed and existing contract for which consideration has passed between the parties. That among other things the trust agreement provides in effect as follows:

"(a) Article 1-A. The net income shall be paid to or applied for the benefit of the donor so long as she shall live.

"(b) Article 2-A(1). That in the event any beneficiary shall be 'incompetent,' that the income payable to said beneficiary may be paid to the guardian or committee or other legal representative wherever appointed of the said incompetent.

"(c) Article 2-D. That no beneficiary shall have the right to dispose of or to assign or transfer any income from said trust until the same shall be paid or distributed to such beneficiary.

"(d) Article 5. The donor reserves the right to revoke or amend this agreement at any time and from time to time by a written instrument other than a will, duly executed and acknowledged by her and delivered during her life to the trustee at the time in office.

"That under these provisions of the said revocable trust agreement dated December 26, 1956, it was clearly the intention of the donor that she should receive the net income from said trust so long as she should live, and that in the event she became incompetent that the said income should be paid to her guardian or duly authorized legal representative; that no person entitled to receive income from said trust has the right to assign or dispose of the income prior to its receipt, and that she alone reserved the right to revoke or amend the said trust agreement during her lifetime. That the effect of the relief requested by the petitioner in this action would be to rewrite the provisions of the contract to completely change donor's intention with respect to the paragraphs and articles hereinabove referred to, and that these respondents are informed and believe that the court is without authority to rewrite said trust agreement in the respects requested."

Judge Mintz, resident judge of the Fifth District, of which New Hanover is a part, presided over the June 1963 Session. The parties stipulated that the proceedings might be consolidated for the purpose of taking testimony, and waived a jury trial on all factual questions raised by the pleadings, except as to the probability of Mrs. Kenan's

regaining mental capacity. To determine that question, the court submitted this issue to a jury: "Is it improbable that Sarah Graham Kenan, incompetent, will recover competency during her lifetime?" The jury answered in the affirmative.

Judge Mintz made findings of fact in each proceeding. Except as noted in the opinion, these findings are in accord with the allegations of the petition. Based on the factual findings, the court drew legal conclusions and entered orders authorizing petitioner to make the gifts as requested except the proposed gift of $125,000 to The North Carolina Episcopal Church School for Boys, Inc., which was not then authorized.

*John T. Manning and Poisson, Marshall, Barnhill & Williams by Alan A. Marshall for petitioner appellee.*

*Hogue and Hill by C. D. Hogue, Jr. for A. R. MacMannis and William R. Kenan, Jr., trustees under a revocable trust agreement dated December 26, 1956, appellants.*

*Wallace C. Murchison and Louis A. Burney, guardians ad litem, appellants.*

RODMAN, J. The appeals of Murchison and Burney as guardians ad litem are directed to the orders entered in each proceeding. The appeal of MacMannis and Kenan as trustees is directed to the validity of the order entered in the proceeding seeking permission to give away Mrs. Kenan's right to receive for her life the income from the trust created by her.

Defendant Murchison, appointed by the court to protect Mrs. Kenan's rights, challenges both the right of the trustee to make and the power of the Legislature or the court to authorize the proposed gifts.

The question for decision then is: Do the facts found, standing alone, suffice to sustain the order? The answer must, we think, be in the negative.

Ours is a constitutional form of government. "It is axiomatic under our system of government that the Constitution within its compass is supreme as the established expression of the will and purpose of the people. Its provisions must be observed by all." *In re Advisory Opinion House Bill* 65, 227 N.C. 708, 43 S.E. 2d 73.

Any governmental act which overrides the restrictions declared in our Constitution or which thwarts the powers granted to the United States is void. *S. v. Felton,* 239 N.C. 575, 80 S.E. 2d 625; *Freeman v. Comrs. of Madison,* 217 N.C. 209, 7 S.E. 2d 354; *Bayard v. Singleton,* 1 N.C. 5.

IN RE TRUSTEESHIP OF KENAN.

Sec. 17, Art. I, of our Constitution imposes this limitation on governmental authority: "No person ought to be . . . disseized of his freehold . . . or in any manner deprived of . . . his property, but by the law of the land." This limitation on governmental authority has been in force since the adoption of our first Constitution in 1776. See sec. 12 of that Constitution.

It is a matter of common knowledge that North Carolina delayed ratification of the Constitution of the United States until Congress had submitted to the States amendments guaranteeing fundamental rights. Among the amendments so submitted was the Fifth, declaring: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use without just compensation." The Fourteenth Amendment to the Constitution of the United States says: "No state . . . shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These constitutional limitations are not confined to the Legislature. They are applicable to courts and to the executive branch of the government. It is immaterial, therefore, whether a court of equity has the authority, without legislative sanction, to authorize the use of an incompetent's income or the principal of his estate for a purpose other than his own support and the discharge of his legal obligations. *Blake v. Respass,* 77 N.C. 193, or whether the right to so direct is dependent upon legislative authority. *Brooks v. Brooks,* 25 N.C. 389; *In the Matter of Latham,* 39 N.C. 231; *In re Hybart,* 119 N.C. 359; *Binney v. R. I. Hospital Trust Co.,* 110 A. 615.

It scarcely need be said that the constitutional limitation against taking of property of a citizen affords the same protection to a lunatic that it affords to a person of sound mind.

The Legislature cannot sanction the *taking* of one's property unless (a) in satisfaction of a legal obligation, or (b) for a public purpose, *Utilities Comm. v. Story,* 241 N.C. 103, 84 S.E. 2d 386; *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600; *Cozard v. Hardwood Co.,* 139 N.C. 283; and when taken for a public purpose, just compensation must be paid. *Davidson v. Stough,* 258 N.C. 23, 127 S.E. 2d 762; *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144.

An interesting illustration of the scope of the constitutional limitation against taking of property of a citizen is to be found in *Allen v. Peeden,* 4 N.C. 442. There the Legislature enacted a statute emancipating slaves of a deceased owner. Although the deceased had expressed a wish that the slaves be emancipated, the statute was held void because title to the slaves had passed to others upon the death of the former owner.

The motives prompting the filing of the several petitions are in no way challenged. The gifts, which the trustee proposes making for his ward, are to deserving beneficiaries and would undoubtedly be of material assistance in promoting the laudable purposes for which each was created and is now functioning.

The amounts proposed to be given from the current income would largely be offset by a reduction in income taxes. The net cost would still leave Mrs. Kenan with ample income for her own needs. She has no financial (legal) obligation which would be adversely affected. The gift from the principal and the taxes to be paid from the principal for the privilege of surrendering the life income from the trust estate, while large when considered as individual items, are relatively small in relation to the total of Mrs. Kenan's estate. If the gifts are authorized, there will be a substantial saving in estate taxes.

While an incompetent's property may not, either with legislative sanction or court order, be *taken* for charitable purposes notwithstanding the part not taken is ample for incompetent's needs, *Monds v. Dugger*, 144 S.W. 2d 761, *Binney v. R. I. Hospital Trust Co., supra;* it is nonetheless true that courts of equity have authorized the *gift* of a part of incompetent's income or principal.

A court may authorize a fiduciary to make a gift of a part of the estate of an incompetent only on a finding, on a preponderance of the evidence, at a hearing of which interested parties have notice, that the lunatic, if then of sound mind, would make the gift. Appellees' argument that the gift may be authorized "if the court under all of the circumstances believes that such gift should be made," if accepted as a correct statement of the law, would permit the court to do that which the lunatic had not done and would not do if same. Such an order, would amount to a taking of property in derogation of lunatic's constitutional rights.

Perhaps the most frequently cited case on the power of a court of equity to authorize the use of an incompetent's property for purposes other than his own support and the support of those to whom he owes a legal obligation is *Ex parte Whitbread*, 35 Eng. Rep. 879, decided in 1816. There a niece of the incompetent sought an allowance from his estate. Lord Chancellor Eldon said: "The difficulty I have had was as to the extent of relationship to which an allowance ought to be granted. I have found instances in which the Court has, in its allowances to the relations of the Lunatic, gone to a further distance than grand-children —to brothers and other collateral kindred; and if we get to the principle, we find that it is not because the parties are next of kin of the Lunatic, or as such, have any right to an allowance, *but because the*

*Court will not refuse to do, for the benefit of the Lunatic, that which it is probable the Lunatic himself would have done."* (Emphasis supplied).

*In the Matter of The Earl of Carysfort,* 41 Eng. Rep. 418, the committee of the person of a lunatic proposed that an annuity be granted to a personal servant who had served the lunatic for many years. The allowance was made upon the statement that if the lunatic was sane he would approve.

*In the Matter of Willoughby,* decided in 1844, 11 Paige (N.Y.) 257, a stepdaughter of the incompetent sought an allowance. The chancellor said: "The court, in such cases, acts for the lunatic, and in reference to his estate, as it supposes the lunatic himself would have acted if he had been of sound mind."

In *In re Strickland,* 6 Ch. Ap., 225, a donation was requested by the officials of a church and school. The lunatic had an income after the payment of annuities and other charges of about 2,656 pounds. The sum of 900 pounds was set aside annually for his maintenance "and it appeared that his comfort could not be increased by any addition to it." The committee of the lunatic's estate and person requested authority to make a donation of 250 pounds to the building of a church and a like sum to the building of a school. The court authorized the donations, citing as authority therefor *Ex parte Whitbread, supra,* and *Oxendin v. Lord Crompton,* 2 Ves. 69.

In *In the Matter of Heeney,* 2 Barb. (N.Y.) 326, the chancellor said: "In the case under consideration, the lunatic, when in full possession of all his faculties, placed himself in the situation of a father to the two young ladies mentioned in the petition, and supported them as members of his family and sent them to a boarding school; where one of them completed her education and has again returned and become a member of his family, leaving the other still at school. I have no doubt, therefore, that if Mr. Heeney had retained the full possession of his faculties he would have continued to support them in the same way while they remained unmarried. I shall therefore but carry out his undoubted intentions, by directing the committee to let these two young ladies remain in the family and be supported as they have heretofore been, until their marriage, or the death of the lunatic, or the further order of the court."

In a later New York case, *In re Flagler,* 224 N.Y.S. 30, a second cousin of Mrs. Flagler (the incompetent) sought an allowance from the surplus income. The court said: "In granting applications of this character the court is not actuated by any supposed interest which the applicant may have in the property of the incompetent. Relief may be

had upon the principle that the court will act with reference to the lunatic and for his benefit as it is probable that he would have acted for himself, if he were of sound mind." The order there approved was reviewed by the New York Court of Appeals, *Re Flagler*, 162 N.E. 471. That court said: "If Mrs. Flagler today could decide upon the disposition of the income of her great estate, moral or charitable considerations would dictate her decision only to the extent that she felt their force. Her great affluence might impel her to relieve the distress of her cousin; the law would not compel her to do so if she decided otherwise. The power of the court to dispose of her income is not plenary. The court may not be moved by its own generous impulses in the disposition of the income of the incompetent. In reaching decision it may give moral or charitable considerations only such weight as it finds that the incompetent herself would have given to them. Allowances for the support of collateral relatives of the incompetent have been made 'upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind.' *Re Lord*, 227 N.Y. 145, 124 N.E. 727. The appellate division correctly held that the allowance made at special term may be justified upon no other theory." See also *In re Hudleson's Estate*, 115 P. 2d 805; *In re Brice Guardianship*, 8 N.W. 2d 576; *Re Beilstein*, 62 N.E. 2d 205; *Potter v. Berry*, 53 N.J. Eq. 151; and the annotations in 34 L.R.A. 297, 59 A.L.R. 653, and 160 A.L.R. 1435.

A summary of the English and Irish cases dealing with the right of a court of equity to use an incompetent's estate other than for his own maintenance and the maintenance and support of his dependants may be found in an article entitled "The Surplus Income of a Lunatic," 8 Harv. L. Rev. 472 (1894-95).

The power and limitation on the power of a court of equity to authorize a fiduciary with respect to the use or other handling of the estate entrusted to him is illustrated in two recent decisions of this Court.

In *Ford v. Bank*, 249 N.C. 141, 105 S.E. 2d 421, adult children of an incompetent sought permission to use a part of his estate to purchase a home. We said: "No one can doubt that financial assistance would be of benefit to the children of the incompetent occupying the economic status in life depicted by the evidence and the findings of fact. If their father were mentally competent, would he not aid them? If so, the court has the authority to use his money for that purpose."

In *Cocke v. Duke University*, 260 N.C. 1, we denied authority to invest trust funds in securities not sanctioned by the trust agreement. As the basis for the denial, we quoted with approval the language of

*Carter v. Kempton,* 233 N.C. 1, 62 S.E. 2d 713: "It is not the province of the courts to substitute their judgment or the wishes of the beneficiaries for the judgment and wishes of the testator."

After oral argument appellees, with our permission, filed a supplemental brief which contained a copy of the opinion of the chancery court of the state of Delaware in the case of *In re Dupont,* 194 A. 2d 309. There the chancellor as the basis of his order authorizing large gifts from the incompetent's estate, said: "The guardians have offered substantial and convincing proof that the ward in fact intended to make such distributions prior to his incompetency."

Relating to the question of what Mrs. Kenan would do if competent, the court found in the proceedings relating to gifts from income and principal:

"In the absence of tax deductible gifts, income retained by Sarah Graham Kenan would be depleted in excess of 85% by State and Federal income taxes and any balance thereof remaining in her estate at her death would be depleted in excess of 75% by death taxes; so that, even in the absence of current expenditure by the general trustee, less than 4% of the income received by Sarah Graham Kenan would remain to be transmitted to her legatees, heirs or next of kin upon her death . . . ."

"Petitioner herein, trustee of the estate and person of Sarah Graham Kenan, has concluded that it is wise and provident, and consistent with the desires of Sarah Graham Kenan (if she were competent) to make the gifts herein authorized and directed."

"It is proper in the exercise of sound judicial discretion, if not mandatory under the provisions of Chapter 111 of the 1963 Session Laws of North Carolina, to approve such declaration and gifts . . ."

Based on his findings of fact the court concluded as a matter of law:

"Considering the situation of Sarah Graham Kenan and her estate, it is in no way detrimental to Sarah Graham Kenan, as a practical matter, but rather it is wise and provident for the petitioner to make the gifts herein authorized and directed.

"It is reasonable to assume that if Sarah Graham Kenan were competent and heeding sound advice, she would make these or similar gifts.

"It is proper in the exercise of sound judicial discretion, if not mandatory under the provisions of Chapter 111 of the 1963 Session Laws of North Carolina, to approve these gifts." . . . .

In the proceeding relating to the surrender of life income reserved in the trust, the court found:

"The Petitioner herein, trustee of the estate and person of Sarah Graham Kenan, has concluded that, for the total net benefit of Sarah Graham Kenan and the natural objects of her bounty, it is wise and provident to declare the trust irrevocable and to make gifts of the life income to the donees named in paragraphs 30 and 31 above."

Based on its factual findings the court concluded as a matter of law:

"Considering the situation of Sarah Graham Kenan and her estate, it is in no way detrimental to Sarah Graham Kenan, and from the standpoint of total net benefit to her and the natural objects of her bounty, it is wise and provident for the Petitioner to declare the 1956 trust agreement irrevocable and to make gifts of the life income to the donees specified in the Order herein. Indeed, it would be improvident not to do so.

"It is reasonable to assume that if Sarah Graham Kenan were competent and heeding sound advice, she would declare the 1956 trust agreement irrevocable and make these or similar gifts, in view of the amount of the estate involved.

"It is proper in the exercise of sound judicial discretion, if not mandatory under the provisions of Chapter 113 of the 1963 Session Laws of North Carolina, to approve such declaration and gifts . . ."

The language in which the court phrases its findings of facts and its legal conclusions is, we think, significant. They amount only to this: The cost to Mrs. Kenan of making the gifts is, when considered with the size of her income and the principal of her estate, insignificant; and the trustee, not Mrs. Kenan or the court, has concluded that it is wise *and consistent with the desires of Sarah Graham Kenan, if she were competent.* The legal conclusion that it is reasonable to assume that Mrs. Kenan, if competent, "and heeding sound advice," would make the gifts is not supported by the findings of fact. If it be said that although stated as a conclusion of law this is in reality a finding of fact, we find no evidence to support such a finding.

Mr. MacMannis, selected by Mrs. Kenan as one of the trustees of the trust created by her in December 1956, has acted as financial advisor and accountant for Mrs. Kenan, her brother, Mr. William R. Kenan, another trustee appointed by Mrs. Kenan, and her sister, Mrs. Wise, for many years. He testified:

"I did state that I met Mrs. Kenan at least once a year, to go over her income tax returns and have her sign them, and that she and I discussed these returns, and that she was fully aware of the impact of the taxes . . . . She was aware that her income was being taxed 87% or 89% for the last ten or fifteen years. That is the flat percentage applied to her entire taxable income . . . . I have discussed with Mrs. Kenan and she was aware of the fact that her income was being taxed at close to or perhaps slightly over 90% each year, and that if gifts were made to charity, which were deductible on the return, the out-of-pocket expense to Mrs. Kenan for making those gifts would be about 10% of the amount of the gift, within the applicable limits of deductibility."

John L. Gray, Jr., a member of the firm of Dewey, Ballantine, Bushby, Palmer & Wood, a prominent law firm in New York City, for many years represented and advised Mrs. Kenan with respect to legal matters. Mr. Gray specialized "in the field of estate and trust work and taxation as it relates to those fields." He drafted Mrs. Kenan's wills. He drafted for her the trust created in 1956. He did this after consultation with Mrs. Kenan's brother, Mr. William R. Kenan, well informed with respect to financial problems and a generous benefactor of educational and charitable institutions in North Carolina.

There is nothing in the record to contradict the testimony of Mr. MacMannis that Mrs. Kenan was well aware of the impact of federal taxes on her income and her estate. Fully informed as she was, her gifts to charity were $8,160 in each of the years 1958, 1959, 1960, and 1961, and in 1962, the year in which she was adjudged incompetent, $8,360. These charitable gifts she had been accustomed to make for many years. After Mrs. Kenan was adjudged incompetent, the trustee filed his petition with and was authorized by the court by order dated 26 November 1962 to continue to make these charitable gifts. The largest single gift which Mr. MacMannis could recollect Mrs. Kenan making in the past twenty-five or thirty years was a gift of $25,000.

The orders, based as they are, either on a misapprehension of the power of the Legislature or upon findings not supported by any evidence, are erroneous and must be vacated.

In view of the conclusion we reach on the fundamental question raised by appellants, we deem it unnecessary to lengthen this opinion by discussing the other assignments of error.

Petitioner may, if he elects, obtain permission to amend his petitions to allege that the authority which he seeks is something which Mrs. Kenan would do, if competent. If permission to amend is allowed,

petitioner may then offer evidence to establish the truth of his allegations.

The order in each proceeding is

Reversed.

HIGGINS, J., dissenting: The record in this proceeding is voluminous. Time does not permit me to do more than record a few of the reasons why I can not concur in the opinion. The fundamental error, I think, is the assumption that these proceedings authorize a taking of property. If the beneficiaries of the gifts had brought this action to force the making of the gifts, the opinion would be sound. What the opinion says, however, is that the owner, acting through her trustee and with the approval of the court under legislative authority, cannot voluntarily make the gifts. The statutes discussed in the opinion (Chapters 111, 112 and 113, Session Laws of 1963) do not require or compel the trustee to do anything. They are permissive only. Before the trustee may exercise any of the powers conferred, the court must make critical findings of fact and then approve.

Until now this Court has not undertaken to say the North Carolina General Assembly may not pass laws regulating the disposition of property by deed, by will, by inheritance, by distribution, even by escheat. Neither has its power been doubted to provide for the appointment of guardians, administrators, receivers, and trustees, and prescribe their duties. *Ford v. Bank,* 249 N.C. 141, 105 S.E. 2d 421. This Court has no power to legislate. "It is our duty to interpret and apply the law as it is written, but it is the function and prerogative of the Legislature to make the law." *State v. Scoggins,* 236 N.C. 19, 72 S.E. 2d 54. "Whether a statute produces a just or an unjust result is a matter for the legislators and not for judges." *Deaton v. Deaton,* 237 N.C. 487, 75 S.E. 2d 398. "Nor are we the judges of the wisdom or impolicy of the law. It is enough that the General Assembly has spoken on the subject. *Wells v. Wells,* 156 N.C. 246, 72 S.E. 311. The defendant complains both at the law and at the insistence of the plaintiffs, but these are matters belonging not to the courts." *Cooper v. Cooper,* 221 N.C. 124, 19 S.E. 2d 237. "Outside the power granted to the Federal Government, the power of the Legislature of North Carolina to enact statutes is without limit, except as restrained by the Constitution of North Carolina." *Milk Commission v. Galloway,* 249 N.C. 658, 107 S.E. 2d 631.

In so far as I have been able to discover, not a single case cited in support of the Court's decision involved legislative authority comparable to Chapters 111, 112, 113, Session Laws of 1963. The enactments

are presumed to be valid until the contrary appears beyond a reasonable doubt. ". . . (T)he presumption is in favor of constitutionality and a statute will not be declared unconstitutional unless the conclusion is so clear that no reasonable doubt can arise." Strong's North Carolina Index, Constitutional Law, § 10, Vol. 1, and supplement thereto, citing 25 cases.

In the hearing before the trial judge, all conceivable interests adverse to the petitioner's request were represented. Near relatives who are *sui juris* joined with the petitioner in recommending the court's approval. After hearing, the trial court concluded with respect to the gifts from income:

> "21. Considering the situation of Sarah Graham Kenan and her estate, it is in no way detrimental to Sarah Graham Kenan, as a practical matter, but rather it is wise and provident for the petitioner to make the gifts herein authorized and directed."

With respect to the gifts from the corpus of the estate, the court concluded:

> "16. Considering the situation of Sarah Graham Kenan and her estate, it is in no way detrimental to Sarah Graham Kenan, as a practical matter, but rather it is wise and provident for the petitioner to make the gift herein authorized and directed."

With respect to the trust, the court concluded:

> "9. This reduction in taxes will be greatly in excess of the amount of trust income remaining to be transmitted to her legatees, heirs, or next of kin in the absence of such declaration and gifts. It is, therefore, to the general, over-all financial advantage of the legatees, heirs and next of kin of Sarah Graham Kenan that the declaration and gifts be made, and in no way detrimental to the incompetent, as a practical matter."
>
> * * *
>
> "31. That the relief sought by the Petitioner herein is consistent with sound estate planning and is in keeping with the action which might be reasonably expected of a competent person acting upon advice of qualified advisors experienced in such matters."

Sarah Graham Kenan is 87 years of age. She has no lineal descendants, no dependents, no debts. She has been adjudged incompetent. The jury has found that condition will continue. The corpus of her estate is worth more than eighty million dollars. The annual income exceeds three million dollars. Why may not the Legislature au-

The records of this and other courts are replete with cases setting up trusts and making contributions to foundations, educational institutions, churches, and other charities. The trustee seeks to follow these sound business practices, but the Court says this is taking private property. To my single-track mind the only thing taken is the right of the trustee, acting for his beneficiary, to do with this vast estate what the General Assembly of North Carolina authorized him to do. The relatives in this public spirited family who are *sui juris* appear to have joined in the trustee's requests. The authority to follow the plan has been authorized by 170 of the people's representatives in session on Halifax Street. It is now set aside by a majority of the seven on Morgan.

This decision will haunt us. I vote to affirm.

PARKER and SHARP, JJ., join in dissenting opinion.